**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0443n.06
Filed: July 28, 2008

**Nos. 05-6360 / 6362**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| EVERETT KIRK OGBURN and | ) | STATES DISTRICT COURT FOR THE |
| KENNETH CRUTCHER, | ) | MIDDLE DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellants. | ) | |
| | ) | |

**Before: MARTIN, GIBBONS, and GRIFFIN, Circuit Judges.**

**JULIA SMITH GIBBONS, Circuit Judge.** Co-defendants Everett Kirk Ogburn and Kenneth Crutcher appeal their convictions and sentences arising from the same drug conspiracy. Ogburn argues that the district court: (1) erred by denying his requested jury instruction; and (2) imposed an unreasonable sentence. Crutcher argues that the district court erred by: (1) admitting another co-defendant's guilty plea; (2) denying him counsel at a critical stage; (3) not suppressing wiretap evidence; (4) enhancing his sentence pursuant to 21 U.S.C. § 841; and (5) enhancing his sentence for prior convictions in violation of his Sixth Amendment right to jury trial. For the following reasons, we affirm Ogburn's and Crutcher's convictions and sentences.

1

**I.**

This case involves a major cocaine distribution conspiracy led by Andrez Miranda and involving Ogburn, Crutcher and fifteen other named defendants. Although most of the defendants pled guilty, Ogburn and Crutcher both pled not guilty and proceeded to a jury trial. Ogburn was found guilty of: (1) conspiracy to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 846; and (2) possession of 500 grams or more of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Crutcher was found guilty of: (1) conspiracy to distribute marijuana and five grams or more of cocaine in violation of 21 U.S.C. § 846; (2) three counts of possession with intent to distribute cocaine[1] in violation of 21 U.S.C. § 841; (4) possession of firearms in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c); and (5) being a felon in possession of firearms in violation of 18 U.S.C. § 922(g).

**A.**

The facts relating to Ogburn are as follows. At trial, the government provided testimony from Drug Enforcement Agency (DEA) agents and wiretap recordings detailing Ogburn's conversations with Miranda and evidence of Ogburn's multiple purchases of cocaine from Miranda.

Ogburn's Presentence Investigation Report (PSR) recommended a base offense level of 26 based on the amount of cocaine attributable to him. But because Ogburn qualified as a career offender due to his two prior felony convictions for violent or drug offenses, the PSR recommended a base offense level of 37, pursuant to U.S.S.G. § 4B1.1(b)(A). As a career offender, his criminal history category was deemed to be VI, resulting in a recommended sentence of 360 months to life.

---

[1] Although the judgment form provides that all three counts involved 500 grams or more of cocaine, the indictment, jury form, and PSR all provide that two of these offenses involved more than 500 grams of cocaine and that one involved more than 5 kilograms of cocaine.

Ogburn objected to the PSR on a number of grounds, including the § 4B1.1 career offender enhancement.

At the sentencing hearing, the district court rejected Ogburn's arguments and adopted a Guidelines range of 360 months to life. It explained, however, that the career offender enhancement[2] is not primarily intended "to punish for the particular crime [of conviction] but to reflect the seriousness [of the defendant's risk of] recidivism." Concerned about the increase of 11 offense-levels (from 26 to 37) and the potential resulting disparity between Ogburn's sentence and that of other co-conspirators, the court found that "the enhancement . . . has an extraordinary and unreasonable impact on [Ogburn's] guideline range." Because this impact "takes this case out of . . . the heartland of cases[,]" the district court determined that it "justifie[d] a downward departure of two offense levels." As a result, the district court determined that Ogburn's offense level should be 35, resulting in a Guidelines range of 292-365 months. The district court then imposed a sentence of 300 months. It went on to explain that in imposing this sentence (as well as Crutcher's), it considered "the nature and circumstances of this offense, [the defendant's] involvement in the conspiracy, as well as the history and characteristics of the defendant." It further noted that the sentence would "reflect seriousness for this offence, . . . promote respect for the law, . . . provide just punishment, . . . afford adequate deterrence, . . . protect the public from further crimes, . . . [and]

---

[2] The district court referred to the "851" enhancement. Pursuant to 21 U.S.C. § 851, the government was required to provide Crutcher notice that it would seek a sentence enhancement based on Crutcher's three previous felony drug convictions in Tennessee state court. The government clearly provided this notice. We presume that the district court was referring to U.S.S.G. § 4B1.1(b)(A), which provides for a base offense level of 37 if the offense carries a statutory maximum of life imprisonment.

3

provide opportunities [for the defendants] to get drug treatment[,] medical care[, a]nd educational opportunities." It also specifically noted that "the sentencing guidelines are not mandatory."

**B.**

The facts relating to Crutcher are as follows. According to testimony at trial, Crutcher was first introduced to Miranda by Miguel Hernandez. Originally, Hernandez acted as a middle-man, purchasing cocaine from Miranda and then selling it to Crutcher. But Crutcher eventually began purchasing cocaine directly from Miranda and distributing it from a supply house. DEA wiretaps and surveillance eventually alerted agents to Crutcher's vehicle (a tan Suburban), which agents observed at the supply house.

Crutcher was arrested on October 27, 2003 while driving the tan Suburban. In his vehicle, arresting officers discovered a bag containing $164,705 in cash which Crutcher said he was taking to "[Hernandez's] people." After a search warrant for Crutcher's house was executed, officers found two loaded handguns, a loaded shotgun, and an additional $23,300 in cash.

Following his arrest, Crutcher came to the DEA office in Nashville where he was interviewed by DEA Agent Marti Roberts. At trial, Roberts testified that after Crutcher was given his *Miranda* warnings, he admitted that he intended to use the $164,705 to pay Hernandez for several kilograms of cocaine that Hernandez had provided Crutcher a few days earlier. Roberts further testified that Crutcher described purchasing cocaine from both Hernandez and Miranda and distributing the cocaine out of a supply house.

Prior to trial, Crutcher filed a *pro se* motion to suppress wiretap evidence and joined (along with Ogburn) another motion filed by other co-defendants to suppress the same evidence. Crutcher

4

also filed a motion to suppress statements made to police following his arrest. After an evidentiary hearing on September 23, 2004, the district court denied each of these motions.

The government filed an information pursuant to 21 U.S.C. § 851 notifying Crutcher that it would seek a sentence enhancement based on Crutcher's three previous felony drug convictions in Tennessee state court.

At trial, co-defendants Adolpho Arrizon, Mickey Flinn, Wantaya Ford, Jaime Guzman, Ronald Petway, John Pillow, Brian Woodward, and Hernandez all testified as to their involvement with Miranda in the conspiracy. Seven of these co-defendants also testified as to their guilty pleas related to this conspiracy. Wiretap recordings and testimony from Hernandez, Arrizon, Agent Matt Bradford, and Roberts chronicled Crutcher's interactions with Miranda and his cocaine purchases from Hernandez and Miranda. Although Miranda did not testify, Roberts testified as to Miranda's guilty plea without objection. Following trial, a jury found Crutcher guilty on all counts.

Crutcher's PSR calculated his recommended Guidelines range in three steps. First, pursuant to U.S.S.G. § 3D1.2, the PSR grouped the conspiracy (21 U.S.C. § 846) and possession with intent to distribute cocaine (21 U.S.C. § 841) offenses. Based on the PSR's assumption that at least 50 but less than 150 kilograms of cocaine were attributable to Crutcher for these offenses, Crutcher's base offense level would have been 36 for the conspiracy and possession offenses under § 2D1.1(c)(2). But because Crutcher's offense involved distribution of cocaine and possession of firearms in furtherance of a trafficking offense, Crutcher qualified as a "career offender" pursuant to § 4B1.1. Accordingly, the PSR recommended a base offense level of 37 for Crutcher's conspiracy and possession with intent to distribute convictions.

Second, pursuant to U.S.S.G. § 3D1.2(c), the felon in possession of firearms offense (18 U.S.C. § 922(g)) was grouped with the first set of offenses, using only the higher base offense level. Crutcher's offense level for the felon in possession of firearms offense was 33, pursuant to § 4B1.4 (b)(3)(B), because he qualified as an "armed career criminal" under U.S.S.G. § 4B1.4 and 18 U.S.C. § 924(e). Because the base offense level for the conspiracy/possession offenses (37) was greater than for his felon in possession charge (33), the PSR assigned Crutcher a base offense level of 37. Combining this with Crutcher's criminal history category VI resulted in a Guidelines range of 360 months to life.

Third, Crutcher's possession of firearms in furtherance of trafficking offense (18 U.S.C. § 924(c)) was considered separately because it requires a consecutive term of imprisonment under U.S.S.G. § 2K2.4, note 1. Pursuant to § 4B1.1(c)(2)(A), adding the mandatory 60 month minimum penalty for the 18 U.S.C. § 924(c) offense to the 360 months to life Guidelines range resulted in a Guidelines range of 420 months to life plus 60 months imprisonment.

Crutcher objected to the Guidelines range recommended by the PSR on a number of grounds. At the sentencing hearing, the district court first addressed the 18 U.S.C. § 841(b) statutory enhancement. Section 841 includes various mandatory statutory enhancements if an offense occurs "after two or more prior convictions for a felony drug offense have become final . . . ." Specifically, it requires a mandatory life sentence for a defendant convicted of possessing 5 kilograms or more of cocaine. *See* 21 U.S.C. § 841(b)(1)(A)(ii). The government relied upon Crutcher's prior convictions in Tennessee state court for the following felony offenses: (1) possession of 300 grams or more of cocaine with intent to distribute, arising out of Crutcher's sale of cocaine to undercover agents on May 30, 1992; (2) conspiracy to sell 300 or more grams of cocaine, arising from events

6

occurring between May 14-30, 1992; and (3) possession of marijuana on May 31, 1992, which constituted a felony due to Crutcher's prior possession convictions.

Crutcher argued that these convictions should be treated as one offense such that the § 841(b) enhancement would not apply. The district court rejected this argument, concluding that Crutcher's prior state convictions were separate felony drug offenses such that the mandatory enhancement applied.[3]

After hearing testimony regarding the amount of drugs attributable to Crutcher and a number of Crutcher's arguments, the district court adopted the Guidelines range of 420 months to life as recommended in the PSR. But based upon the § 841(b) mandatory statutory enhancement, the district court sentenced Crutcher to a life-sentence with a 60-month consecutive sentence.[4]

## II.

### A.

Ogburn contends the district court: (1) erred by refusing to give his requested jury instruction; and (2) imposed a procedurally unreasonable sentence. We address each argument in turn.

---

[3] In addition, pursuant to U.S.S.G. § 4B1.4, the district court concluded that Crutcher qualified as an armed career criminal under 18 U.S.C. § 924(e) which, in turn, applies to a defendant that violates § 922(g) and has three previous violent felony convictions.

[4] The life sentence was based on Crutcher's conspiracy and possession of greater than 5 kilograms of cocaine offenses. *See* § 841(b)(1)(A)(ii). The district court imposed concurrent 360 month sentences for the two possession of 500 grams or more offenses and the § 922(g) offense.

7

**1.**

A district court's refusal to give a specific instruction is typically reviewed for abuse of discretion. *Fisher v. Ford Motor Co,* 224 F.3d 570, 576 (6th Cir. 2000). Because Ogburn did not object to the proposed instructions, however, our review is for plain error. *See United States v. Cleaves*, 299 F.3d 564, 567 (6th Cir. 2002). To establish plain error, Ogburn must "show (1) error, (2) that was obvious or clear, (3) that affected [his] substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (*en banc*) (citation and quotation marks omitted).

Ogburn argues that the district court should have given the jury his first proposed instruction: "Single acts, without more, are insufficient to link a defendant to a conspiracy." Ogburn contends that the district court should have given this instruction because a buyer-seller relationship alone does not establish the agreement necessary to prove membership in a conspiracy. Ogburn is correct that a defendant's involvement in a conspiracy requires awareness of the object of the conspiracy and voluntarily association with the conspiracy. *See, e.g.,United States v. Gibbs,* 182 F.3d 408, 421-22 (6th Cir. 1999). But a district court is not required to explicitly clarify the difference between a buyer-seller relationship and a conspiracy so long as it "has given a complete instruction reciting all the elements of conspiracy and requirements for membership in a conspiracy." *Riggs v. United States*, 209 F.3d 828, 833 (6th Cir. 2000).

To establish Ogburn's participation in the conspiracy, in addition to the amount of drugs involved (500 grams or more of cocaine), the government was required to prove "(1) an agreement

to violate drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy." *See United States v. Colon*, 268 F.3d 367, 375 (6th Cir. 2001).

The district court instructed the jury, in relevant part, that it would need to find that:

> <u>First</u>, two or more persons reached an agreement or came to an understanding to knowingly and intentionally distribute or possess with intent to distribute controlled substances;
> <u>Second</u>, from on or about November 1, 2002, to on or about October 27, 2003, the defendants voluntarily and intentionally joined in the agreement or understanding; and
> <u>Third</u>, you find that the agreement or understanding involved a quantity of a mixture or substance containing a detectable amount of marijuana and 500 grams or more of a mixture or substance containing cocaine.

This jury instruction accurately stated the required elements for membership in the conspiracy. *See Riggs*, 209 F.3d at 833. Therefore, the district court did not err, let alone plainly err, by refusing to give Ogburn's additional instruction.

**2.**

Ogburn also argues that in imposing his sentence, the district court committed procedural errors by treating the Guidelines as mandatory and failing to fully consider the other § 3553(a) factors. We conclude that the district court committed no such errors.

Following *Booker v. United States*, we review sentences for reasonableness. 543 U.S. 220, 260-62 (2005). This review has both procedural and substantive components. *Gall v. United States* 128 S.Ct. 586, 597 (2007). As the Supreme Court recently explained, treating the Guidelines as mandatory or failing to consider the § 3553(a) factors would constitute "significant procedural error." *Id.*

Ogburn first contends that the district court treated the Guidelines as mandatory because it "explicitly determined a guideline range and sentenced with that range as a firm starting point." This

9

argument is not well taken. The district court *was required to* properly calculate the Guidelines range, *id.*, which as "[t]he Supreme Court explained in *Gall* [is] *the 'starting point and the initial benchmark'* for federal sentencing." *See United States v. Thompson*, 515 F.3d 556, 561 (6th Cir. 2008) (emphasis added) (quoting *Gall,* 128 S.Ct. at 596). In this case, the district court explicitly noted that "the sentencing guidelines are not mandatory." Moreover, the district court exercised its discretion by sentencing Ogburn to 300 months—below the properly calculated Guidelines range of 360 months to life.

Ogburn also suggests that the district court impermissibly "applied a rebuttable presumption" that the Guidelines range provided an appropriate sentence. Ogburn is correct that a district court may not presume that the Guidelines range provides a "reasonable" or appropriate sentence. *See United States v. Wilms*, 495 F.3d 277, 281 (6th Cir. 2007). Pursuant to 18 U.S.C. § 3553(a), the district court's obligation is to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in [§ 3553(a)(2)]." "Reasonableness is the *appellate* standard of review in judging whether a district court has accomplished its task." *United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006). And this court's presumption that within-Guidelines sentences are substantively reasonable, *see United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006), is an *appellate* presumption. *See Rita v. United States*, 127 S.Ct. 2456, 2465 (2007).[5]

---

[5] Ogburn devotes a significant portion his brief to arguing that appellate proportionality review is incompatible with *Booker*. Indeed, our appellate review may not require extraordinary justifications for large variances or employ a "rigid mathematical formula" comparing the strength of such a justification with the extent of a variance. *Gall*, 128 S.Ct. at 595. But Ogburn fails to explain how our *appellate* standard of review influenced *the district court's* imposition of Ogburn's below-Guidelines sentence.

10

But the record does not indicate that the district court applied a rebuttable presumption that the Guidelines provided an appropriate sentence. *Compare Wilms*, 495 F.3d at 281 (concluding sentence was unreasonable because district court explicitly required defendant to "overcome the presumption of reasonableness with respect to the sentencing guidelines"). The fact that the district court ultimately imposed a below-Guidelines sentence strongly suggests that it did not presume that the Guidelines provided an appropriate sentence. Still, Ogburn suggests that "it is conceivable, based on the district court's comments, that it would have sentenced [Ogburn] even lower, but for the guidelines." This may be true. But the Guidelines are one of the factors to be considered; the district court's consideration of them does not mean that the district court presumed that the Guidelines provided an appropriate sentence or treated the Guidelines as mandatory.

We also conclude that the district court adequately considered the § 3553(a) factors—which ultimately caused it to impose a below-Guidelines sentence. Overall, the district court noted that both Ogburn's and Crutcher's sentences were based upon a number of § 3553(a) factors—the seriousness of the offense, promoting respect for the law, providing just punishment, affording deterrence, and the need to protect the public from future crimes. With respect to Ogburn in particular, the district court noted the importance of providing him the opportunity to obtain treatment and education while incarcerated and its concern that the U.S.S.G. § 4B1.1 enhancement "extraordinarily and unduly exaggerated" his Guidelines range. It also considered the potential disparity between Ogburn's sentence and other members of the conspiracy.

The district court did not treat the Guidelines as mandatory or fail to consider the § 3553(a) factors. Accordingly, Ogburn's procedural reasonableness argument fails.

11

**B.**

Crutcher argues that the district court erred by: (1) admitting another co-defendant's guilty plea; (2) denying him counsel at a critical stage; (3) not suppressing wiretap evidence; (4) enhancing his sentence pursuant to 21 U.S.C. § 841; and (5) enhancing his sentence for prior convictions in violation of his Sixth Amendment right to jury trial. We address each argument in turn.

**1.**

Crutcher first argues that the admission of a non-testifying alleged co-conspirator's (Miranda's) guilty plea violated his Sixth Amendment right to confront a witness against him. Roberts testified that Miranda, the focus of the DEA's investigation, had pled guilty to the drug conspiracy at issue.

Generally, "Confrontation Clause violations are subject to harmless error review." *Jordan v. Hurley*, 397 F.3d 360, 363 (6th Cir. 2005). But because Crutcher did not object to the introduction of Miranda's plea at trial, we review this claim for plain error. *See United States v. Baker*, 458 F.3d 513, 517 (6th Cir. 2006). Again, to show plain error, Crutcher must "show (1) error, (2) that was obvious or clear, (3) that affected [his] substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *Vonner*, 516 F.3d at 386 (citation and quotation marks omitted).

The Confrontation Clause requires that "testimonial" out-of-court statements offered against the accused to prove the truth of the matter asserted only be admitted if the declarant is unavailable and the defendant has had an opportunity to cross-examine the defendant. *United States v. Cromer*, 389 F.3d 662, 671 (6th Cir. 2004) (citing *Crawford v. Washington*, 541 U.S. 36, 61, 68 (2004)). The

government does not contend that Miranda was unavailable or that Crutcher had a previous opportunity to cross-examine him. Therefore, it was constitutional error to admit Miranda's plea if the plea was (a) testimonial, and (b) offered for the truth of the matter asserted.

We need not decide whether Miranda's plea was testimonial or offered for the truth of the matter asserted. Assuming both *arguendo*, Crutcher cannot show that his substantial rights were violated by the admission of Miranda's guilty plea. Given the overwhelming amount of testimony by other defendants in this case regarding the existence of a conspiracy and Miranda's leading role in it, Crutcher cannot seriously argue that jurors doubted either fact. And Hernandez, Arrizon, Bradford, and Roberts all tied Crutcher to Miranda and described Crutcher's own role in the conspiracy. Because Crutcher cannot show that the jury would have reached a different conclusion had evidence of Miranda's plea not been admitted, he has not established that his substantial rights were violated by any potential error.

**2.**

Crutcher next contends that he was "denied counsel at a critical stage"—during the September 24, 2004 suppression hearing. But Crutcher does not allege that his counsel was absent from the suppression hearing. *Compare Bell v. Cone*, 535 U.S. 685, 695 (2002) ("A trial would be presumptively unfair . . . where the accused is denied the *presence* of counsel at a critical stage . . . .") (emphasis added) (citations and quotation marks omitted). Instead, Crutcher argues that the district court should have honored his request (on the eve of the suppression hearing) to substitute David Cooper for Edward Kindall as his attorney. The district court denied this request along with Kindall's motion to withdraw, but allowed Cooper to participate in the suppression

13

hearing. Although Crucher had two attorneys present at the hearing, he contends that because of his "breakdown in communication" with Kindall, the court should have allowed him to substitute counsel.

We review the denial of a motion to substitute counsel for abuse of discretion. *United States v. Trujillo*, 376 F.3d 593, 606 (6th Cir. 2004). In reviewing denial of a motion to substitute counsel, we consider:

> (1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice.

*Id.* (citing *United States v. Mack,* 258 F.3d 548, 556 (6th Cir. 2001)). Weighing these factors, we conclude that the district court did not abuse its discretion. First, Crutcher submitted his request to substitute counsel on the eve of a suppression hearing involving eighteen defendants. *See Trujillo,* 376 F.3d at 606-07 (noting untimeliness of motion to substitute submitted three days before trial). Second, after denying Kendall's motion and allowing Cooper to remain at the suppression hearing, the district court asked Crutcher his thoughts about this arrangement. Crutcher answered "[i]t is fine." This exchange indicates that the district court adequately inquired into the matter. *See United States v. Sullivan*, 431 F.3d 976, 980-81 (6th Cir. 2005) (court's inquiry was adequate where a defendant informed the court that counsel could proceed). Third, any conflict between Crutcher and Kindall does not appear to have caused a "total lack of communication preventing an adequate defense . . . ." *See Trujillo*, 376 F.3d at 606. Instead, Crutcher merely had two attorneys present at the suppression hearing.

14

**3.**

Crutcher next argues that the district court erred by not suppressing evidence from the wiretaps because the government did not show that such wiretaps were necessary. "When reviewing the denial of a motion to suppress, we review the district court's findings of fact for clear error and its conclusions of law *de novo.*" *United States v. Foster* 376 F.3d 577, 583 (6th Cir. 2004). Regarding the issuance of warrants for electronic surveillance under 18 U.S.C. § 2518, "great deference is normally paid to the determination of an issuing judge." *United States v. Giacalone,* 853 F.2d 470, 479 (6th Cir. 1988) (citation and quotation marks omitted). "The burden of production and persuasion rests on the person seeking to suppress evidence." *United States v. Smith,* 783 F.2d 648, 650 (6th Cir. 1986).

A judge may issue a warrant for electronic surveillance if (1) "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous," and (2) an application includes a "a full and complete statement" to this effect. 18 U.S.C. § 2518(3)(c), (1)(c). "However, the government is not required to prove that every other conceivable method has been tried and failed or that all avenues of investigation have been exhausted." *Giacalone,* 853 F.2d at 480 (quoting *United States v. Alfano*, 838 F.2d 158, 163 (6th Cir. 1988)). Instead, "[a]ll that is required is that the investigators give serious consideration to the non-wiretap techniques prior to applying for wiretap authority and that the court be informed of the reasons for the investigators' belief that such non-wiretap techniques have been or will likely be inadequate." *Alfano*, 838 F.2d at 163-64.

15

The district court found that the government provided "multiple alternative means of investigation and explained why each failed to achieve all the objectives of the investigation, why each was unlikely to succeed if tried, or why such efforts threatened to alert the conspirators to the investigative efforts." It also noted that the government had submitted affidavits attesting to the inadequacy of using many other methods including physical surveillance, undercover agents, confidential informants, and traditional search warrants. The government asserted that these methods threatened to alert the conspirators to the investigative efforts or would fail to meet the full objectives of the investigation, which sought to identify other conspirators, dates, times, and locations of conspiracy activities. Crutcher does not argue that any of the district court's findings were clearly erroneous.

Instead, Crucher argues that once the hub of the conspiracy (Miranda) was identified, "there was no proof that . . . traditional methods could not have been utilized." But the government was not required to *prove* that traditional methods *could not have been utilized*. Instead, it only needed to provide reasons for its belief that traditional methods were likely to be inadequate. *Alfano*, 838 F.2d at 163-64. Crutcher fails to explain how traditional methods that the government believed were inadequate for achieving the objectives of the investigation became adequate once the government learned (in part through electronic surveillance) that Miranda was the hub of the conspiracy. After Miranda was identified, the government still sought to identify additional members and activities of the conspiracy, and the affidavits still support the conclusion that traditional methods would be inadequate to achieve this objective. The district court did not err in denying the motion to suppress.

16

**4.**

Crutcher next contends that the district court erred in sentencing him to life imprisonment pursuant to 21 U.S.C. § 841.[6] Section 841 requires, in relevant part, that a defendant convicted of possessing 5 kilograms or more of cocaine be sentenced to life imprisonment if he commits this offense "after two or more prior convictions for a felony drug offense have become final . . . ." *See* 21 U.S.C. § 841(b)(1)(A)(ii). Crutcher argues that the district court erred in applying this statutory provision because his prior drug offenses should have been treated together as one conviction.

Because "determining whether the conduct was a single occasion or multiple occasions presents a legal question concerning the interpretation of a statute, we review the district court's decision de novo." *United States v. Thomas*, 211 F.3d 316, 319 (6th Cir. 2000).

"Life sentences under § 841(b) are triggered by predicate criminal episodes that occur at distinct times.'" *United States v. Anderson*, 76 F.3d 685, 690 (6th Cir. 1996) (citation and quotation marks omitted) (also finding it significant that defendant's prior felonies occurred at "at different places, and with different people," *id*. at 691). Even where the timing of two convictions overlaps, "[a]n episode is an incident that is part of a series, but forms a separate unit within the whole. Although related to the entire course of events, an episode is a punctuated occurrence with a limited duration." *United States v. Hughes,* 924 F.2d 1354, 1361 (6th Cir.1991).

In this case, the district court properly applied § 841(b). The government relied upon three prior Tennessee state court convictions for felony offenses: (1) possession of 300 grams or more of

---

[6] Although Crutcher refers to 21 U.S.C. § 851, which provides the *notice* provision associated with § 841, we understand Crutcher to be challenging the imposition of the life sentence rather than the notice he received that this enhancement would be sought.

cocaine with intent to distribute, arising out of Crutcher's sale of cocaine to undercover agents on May 30, 1992; (2) conspiracy to sell 300 or more grams of cocaine, arising from events occurring between May 14-30, 1992; and (3) possession of marijuana on May 31, 1992, which constituted a felony due to Crutcher's prior possession convictions.

Although there was some overlap between the cocaine possession with intent to distribute and conspiracy convictions, the former seems to qualify as "an incident that is part of a series, but forms a separate unit within the whole [conspiracy]." *See Hughes,* 924 F.2d at 1361. Regardless, the marijuana possession conviction clearly arose from conduct occurring at a time (May 31) distinct from the conduct involved in the conspiracy (May 14-30) and cocaine possession (May 30) convictions and occurred in a distinct place (Crutcher's home). Accordingly, the marijuana possession conviction constituted a separate episode from the cocaine possession and conspiracy convictions. *See Anderson*, 76 F.3d at 690. Because the government established at least two—if not three—felony convictions, the district court did not err in applying § 841(b).

**5.**

Crutcher argues that enhancing his Guidelines range based on the fact of prior convictions not proven to a jury beyond a reasonable doubt violated the Sixth Amendment. The Supreme Court has held that the fact of a prior conviction need not be submitted to a jury. *Almendarez-Torres v. United States*, 523 U.S. 224 (1998); *see also Apprendi v. New Jersey*, 530 U.S. 466, 489-90 (2000) (noting that "[arguab[ly] *Almendarez-Torres* was wrongly decided," but still holding that "*[o]ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt")

18

(emphasis added). Still, Crutcher argues that the prior conviction exception is no longer good law based on Justice Thomas's concurrence in *Shepard v. United States,* 544 U.S. 13, 27-28 (2005) (Thomas, J., concurring) (noting that "a majority of the Court now recognizes that *Almendarez-Torres* was wrongly decided[,]" and that "in an appropriate case, this Court should consider *Almendarez-Torres'* continuing viability").

But following *Shephard,* this court has held that *Almendarez-Torres* remains good law. *See United States v. Jones*, 453 F.3d 777, 779 (6th Cir. 2006); *United States v. Hill*, 440 F.3d 292, 298-99 & n.3 (6th Cir. 2006) (rejecting argument that Justice Thomas's concurrence renders *Almendarez-Torres* overruled because "the Court of Appeals should follow the case which directly controls, leaving to [the Supreme Court] the prerogative of overruling its own decisions") (quoting *Tenet v. Doe*, 544 U.S. 1, 10-11 (2005)) (internal quotation marks omitted). Accordingly, the fact of Cructher's prior convictions did not need to be submitted to a jury.

**6.**

Crutcher has submitted a supplemental *pro se* brief alleging a number of additional grounds upon which the district court erred. Because Crutcher was represented by counsel on appeal, we decline to address these claims. *See United States v. Howton,* 260 F. App'x 813, 819 (6th Cir. 2008) ("We decline to address these arguments because [the defendant] was represented by counsel in this matter."); *United States v. Jenkins,* 229 F. App'x 362, 370 (6th Cir. 2005) ("[W]e do not ordinarily consider *pro se* claims brought by a defendant represented by counsel on appeal. . . .").

**III.**

For the foregoing reasons, we affirm.