NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0588n.06

**No. 12-2468**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| ENRIQUE AMAYA | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

**FILED**
Aug 04, 2014
DEBORAH S. HUNT, Clerk

BEFORE:    BATCHELDER, Chief Judge; KEITH and STRANCH, Circuit Judges.

**DAMON J. KEITH, Circuit Judge.**  Enrique Amaya appeals the district court's denial of his motion to suppress the results of wiretap authorization orders and the denial of his motion for severance, in connection with his prosecution for (and ultimate conviction of): conspiracy to travel in interstate commerce with intent to commit murder; using a firearm in furtherance of a crime of violence or drug trafficking offense causing death; and conspiracy to possess with intent to distribute 5 or more kilograms of cocaine.  Because the district court did not err or abuse its discretion in denying Amaya's motions, we **AFFIRM**.

**I.**

Amaya was involved in an extensive drug trafficking conspiracy, smuggling kilograms of cocaine from Mexico to Michigan, via a Colorado-based supplier named Joaquin Lucero-Carrillo.  When law enforcement officers seized over $220,000 that Amaya sent to Lucero-Carrillo as payment, and later, nearly 5 kilograms of cocaine from one of Amaya's couriers,

Amaya found himself deeply indebted to Lucero-Carrillo. Amaya plotted to have a hit-man murder Lucero-Carrillo in order to extinguish his debt. On June 1, 2010, the hit man murdered Lucero-Carrillo.

Amaya and several other defendants were charged in a three-count superseding indictment with: conspiracy to travel in interstate commerce with intent to commit murder; using a firearm in furtherance of a crime of violence or drug trafficking offense causing death; and conspiracy to possess with intent to distribute 5 or more kilograms of cocaine.

Amaya moved, pre-trial, to suppress wiretap evidence. R. 219: Motion to Suppress Fruits of Electronic Surveillance and for Evidentiary Hearing, PgID 1928-2210. The district court denied his motion. R. 346: Opinion and Order, PgID 3352-62.

Four of Amaya's codefendants pled guilty to the charges against them. Amaya and one co-defendant, Franklin Baquedano, opted to proceed to trial. After the government, Amaya, and Baquedano rested their cases, Amaya moved to sever. R. 240: Corrected Motion for Severance, PgID 1501-08. The district court denied the motion for severance and submitted the case for the jury's consideration. R. 458: Trial Transcript, 5/31/12, PgID 5653-55. The jury then convicted Amaya on all charges and found Baquedano not guilty. R. 424: Jury Verdict Form, PgID 5173-74. The district court sentenced Amaya to life imprisonment on October 29, 2012, R. 444: Judgment, PgID 5409-13, and Amaya timely filed a notice of appeal. R. 448: Notice of Appeal, PgID 5428.

## II.

A. *The district court judges who issued wiretap authorizations properly found that the wiretap applications met the requirements of 18 U.S.C. § 2518(1)(c), and the trial court therefore did not err in denying Amaya's motion to suppress.*

Amaya moved to suppress the fruits of three of the government's wiretap applications. Each application for wiretap authorization was reviewed by a federal judge before the wiretap orders were extended. The trial court denied Amaya's motions to suppress the fruits of the wiretap authorization orders, and Amaya now contends that doing so was error because the government did not sufficiently demonstrate necessity. In reviewing the validity of the wiretap authorizations, we "accord 'great deference' to the determinations of the issuing judge." *United States v. Corrado*, 227 F.3d 528, 539 (6th Cir. 2000) (quoting *United States v. Alfano*, 838 F.2d 158, 162 (6th Cir. 1988)).

Applications for a Title III wiretap authorization require "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." *United States v. Rice*, 478 F.3d 704, 709-10 (6th Cir. 2007) (internal quotation omitted). The government must inform the deciding court "of the reasons for the investigators' belief that . . . non-wiretap techniques have been or will likely be inadequate." *Alfano*, 838 F.2d at 163-64 (internal quotation omitted). The so-called "necessity" requirement of 18 U.S.C. § 2518 ensures that wiretapping is not "routinely employed as the initial step in criminal investigations." *Id.* at 163 (internal quotation omitted). The government "is not required to prove that every other conceivable method has been tried and failed or that all avenues of investigation have been exhausted." *United States v. Giacalone*, 853 F.2d 470, 480 (6th Cir. 1988) (quoting *Alfano*, 838 F.2d at 163).

Amaya bears the burden of production and persuasion. *See United States v. Ogburn*, 288 F. App'x 226, 236 (6th Cir. 2008); *United States v. Smith*, 783 F.2d 648, 650 (6th Cir. 1986). Yet, Amaya's arguments, when compared with the record, are wholly unpersuasive. Though

Amaya claims that the government's applications were submitted in boilerplate fashion, the record reflects that the investigating federal agents described in great detail the investigative techniques that they had employed.

The Special Agent's October 2009 affidavit detailed the use of a number of investigative techniques that had been used in seeking evidence against Victor Medina, one of Amaya's co-conspirators. *See* 18 U.S.C. §§ 2510 (11), 2518 (10)(a) (showing that any party to an intercepted wire communication may move to suppress the contents of that communication). Importantly, the Special Agent explained that these myriad techniques had not produced fruitful results because of the conspirators' ability to defeat those techniques, in demonstration of the necessity of wiretapping. *See, e.g.*, R. 219-2: 10/05/09 Aff. of M. Jeneary (detailing multiple techniques that agents had used while investigating Amaya and noting that his location and ability to defeat physical surveillance methods made physical surveillance particularly unsuccessful). Agents determined that wiretapping would be the only way to obtain evidence of the drug trafficking conspiracy, given its geographic scope and the large number of people involved in the conspiracy.

Federal judges agreed. In granting the first wiretap order in October 2009, Judge Zatkoff noted that the government had "adequately established that normal investigative procedures have been tried and failed, reasonably appear unlikely to succeed if continued, or reasonably appear unlikely to succeed if tried." R. 468-2, PgID 5686. Applications for extensions of the wiretap authorization, the second of which specifically named Amaya, included even more detail, including descriptions of intercepted calls—providing additional evidence of the necessity of the wiretap orders. *See* R. 219-6: 11/04/09 Aff. of M. Jeneary, PgID 2032-43; R. 219-20: 05/13/10

Aff. of M. Jeneary, PgID 2100-14. Amaya's contentions that the government applied for wiretap authorizations using boilerplate assertions are undercut by the record, and are meritless.

B.     *Amaya was not prejudiced by the district court's denial of his motion to sever.*

We have held that the decision to deny a motion to sever "rests within the wide discretion of the district court and will not be reversed absent an abuse of discretion." *United States v. Long*, 190 F.3d 471, 476 (6th Cir. 1999). A defendant must demonstrate "compelling, specific, and actual prejudice from [the] court's refusal to grant the motion to sever" in order to prevail on appeal. *United States v. Driver*, 535 F.3d 424, 427 (6th Cir. 2008) (quoting *United States v. Saadey*, 393 F.3d 669, 678 (6th Cir. 2005)).

The Federal Rules of Criminal Procedure provide that "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." FED. R. CRIM. P. 14(a). However, it is preferable for defendants who are indicted together to be tried jointly. *Long*, 190 F.3d at 476. Moreover, a district court should sever properly joined defendants under Rule 14 only "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

Amaya's co-defendant, Baquedano, testified in his own defense after the government and Amaya had rested. After Baquedano's testimony, Amaya moved for severance, arguing that Baquedano had presented an antagonistic defense. The district court denied the motion and submitted the case to the jury for a verdict. Amaya now argues that Baquedano's testimony linked him to drug trafficking, and was thus unfairly prejudicial.

Again, Amaya's argument is unpersuasive. Mutually antagonistic defenses do not alone create the kind of prejudice against which Rule 14 offers protection. *Zafiro*, 506 U.S. at 538-39. The record reflects that a multitude of evidence apart from Baquedano's testimony linked Amaya to drug trafficking. *See, e.g.,* R. 410, PgID 4377-86. The government also correctly notes that had Amaya's motion been granted, the government would have been able to call Baquedano as a witness against Amaya. Gov. Br. at 45. Because he has not shown that his trial rights were compromised or that the jury was prevented from reaching a reliable verdict, Amaya has not demonstrated that his motion for severance should have been granted.

Even if Amaya had successfully shown evidence of prejudice, the district court instructed the jury to consider each defendant and each charge separately. Such limiting instructions often cure potential prejudice. *See Driver*, 535 F.3d at 427. Amaya has not shown that the jury failed to follow the district court's instructions, and has otherwise failed to demonstrate that he suffered any other actual prejudice. Accordingly, we cannot find that the district court abused its wide discretion in denying Amaya's motion to sever. We **AFFIRM**.