RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 23a0133p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

ENRIQUE AMAYA,

     *Petitioner-Appellant*,

    *v.*

UNITED STATES OF AMERICA,

     *Respondent-Appellee*.

No. 21-1781

─────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
Nos. 2:10-cr-20338-2; 2:19-cv-13395—Paul D. Borman, District Judge.

Argued: June 14, 2023

Decided and Filed: June 23, 2023

Before: SUTTON, Chief Judge; LARSEN and MURPHY, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Doron M. Kalir, CLEVELAND-MARSHALL COLLEGE OF LAW, Cleveland, Ohio, for Appellant. Mark Chasteen, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee. **ON BRIEF:** Doron M. Kalir, CLEVELAND-MARSHALL COLLEGE OF LAW, Cleveland, Ohio, for Appellant. Mark Chasteen, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

─────────────────

## OPINION

─────────────────

LARSEN, Circuit Judge. Enrique Amaya is currently serving three concurrent life sentences. He filed a 28 U.S.C. § 2255 motion challenging just one of his convictions. The district court denied the petition without reaching the merits. The court reasoned that even if his motion were successful, Amaya would still be in custody on the two unchallenged life sentences

and that the $100 special assessment attached to Amaya's challenged conviction did not warrant review in the context of a § 2255 petition.  We AFFIRM.

I.

Amaya was involved in a large-scale drug trafficking conspiracy that turned sour.  The operation smuggled cocaine from Mexico to Michigan, utilizing a supplier in Colorado named Joaquin Lucero-Carrillo.  *United States v. Amaya*, 574 F. App'x 720, 721 (6th Cir. 2014).  Amaya became "deeply indebted to Lucero-Carrillo" when law enforcement seized nearly five kilograms of cocaine from Amaya's courier and hundreds of thousands of dollars intended for Lucero-Carrillo as payment.  *Id.*  Rather than pay his debt, Amaya planned to have Lucero-Carrillo killed.  *Id.*  Pursuant to those plans, a hit man traveled from Michigan to Colorado and murdered Lucero-Carrillo in June 2010.  *Id.*

In June 2012, a jury convicted Amaya of three counts: (1) conspiracy to travel in interstate commerce with intent to commit murder, in violation of 18 U.S.C. § 1958; (2) using a firearm during and in relation to a crime of violence causing death, in violation of 18 U.S.C. § 924(c) and (j); and (3) conspiracy to possess with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. § 846.  Amaya's conviction for murder conspiracy carried a mandatory life sentence under 18 U.S.C. § 1958(a).  The district court imposed a sentence of life imprisonment for each count, to be served concurrently.  The court also ordered Amaya to pay a statutorily required "special assessment" of $100 per count of conviction, for a total of $300.  *See* 18 U.S.C. § 3013(a)(2).  A panel of this court affirmed Amaya's convictions on direct appeal.  *See Amaya*, 574 F. App'x at 723.

Years later, Amaya filed a pro se motion under 28 U.S.C. § 2255 to vacate his conviction and sentence on count two, arguing that after *United States v. Davis*, 139 S. Ct. 2319 (2019), his murder conspiracy charge was no longer a valid predicate crime of violence for his § 924(c) conviction.[1]  The district court invoked the "concurrent sentence doctrine" and denied relief

---

[1]Amaya filed his motion in 2019, within one year of the Supreme Court's decision in *Davis*.  *See* 28 U.S.C. § 2255(f)(3).  Although § 2255 motions are subject to a one-year statute of limitations, the government stipulated that Amaya's motion was timely.

without reaching the merits. Amaya appealed; this court granted Amaya a certificate of appealability and appointed him counsel.

II.

Amaya contends that the district court erred by dismissing his *Davis* claim without reaching the merits. We disagree.

Amaya challenges his conviction pursuant to 28 U.S.C. § 2255. That statute limits its reach to "prisoner[s] *in custody* under sentence of a court established by Act of Congress *claiming the right to be released . . . .*" *Id.* § 2255(a) (emphasis added). So, unless Amaya is "claiming the right to be released" from "custody," we cannot grant him relief. *See United States v. Watroba*, 56 F.3d 28, 29 (6th Cir. 1995) ("The plain language of § 2255 provides only prisoners who claim a right to be released from custody an avenue to challenge their sentences.").

The Supreme Court has explained that a petitioner is "in custody" when he is subject to conditions that "significantly restrain [the] petitioner's liberty to do those things which in this country free men are entitled to do." *Jones v. Cunningham*, 371 U.S. 236, 238, 243 (1963); *see Hautzenroeder v. DeWine*, 887 F.3d 737, 740 (6th Cir. 2018) (applying the same definition). A prison term is obviously such a restraint. So Amaya's petition would plainly fall within the statute if vacating his § 924(c) conviction could affect the length of his prison term. But Amaya is serving three concurrent life sentences; he challenges only one of them. Were we to vacate the one conviction he contests, he would still be in prison for the rest of his life. Amaya does not contend otherwise. Nor does he suggest any other way in which granting him relief would affect his custody. He does not argue, for example, that "vacatur of only one concurrent sentence" could be "characterized as 'release.'" *Kassir v. United States*, 3 F.4th 556, 567 n.64 (2d Cir. 2021). So we do not explore that question here.[2] *See Geboy v. Brigano*, 489 F.3d 752, 767 (6th

---

[2]Amaya's briefing expressly disclaimed a custody-based argument, going as far as to say custody was not "even relevant." Amaya's counsel attempted to retreat from that position at oral argument. But that was too little, too late. *See Resurrection Sch. v. Hertel*, 35 F.4th 524, 530 (6th Cir. 2022) (en banc) ("[T]his argument was forfeited because it was raised for the first time at oral argument.").

Cir. 2007) ("We decline to identify and address the arguments that Petitioner could have made but did not. . . .").

Amaya suggests only that the $100 special assessment he must pay for each of his concurrent life sentences constitutes a harm that makes his claim cognizable. But the plain terms of § 2255 tell us that we may not use the statute to correct errors that cannot affect a petitioner's "release[] from custody." *Watroba*, 56 F.3d at 29. And "[a] monetary fine is not a sufficient restraint on liberty to meet the 'in custody' requirement for § 2255 purposes." *Id.* (citation omitted); *see also Sevier v. Turner*, 742 F.2d 262, 269 (6th Cir. 1984) ("[A] fine imposed in a criminal case does not create custody for purposes of §§ 2241 and 2254."). If a fine is not "custody," then a petitioner seeking nothing more than relief from an obligation to pay a monetary assessment is not "claiming the right to be released" from custody and is not entitled to relief under § 2255.**[3]** *See United States v. Ross*, 801 F.3d 374, 382 (3d Cir. 2015) ("Because we believe the burden of a special assessment—even one imposed in conjunction with a wrongful conviction—does not amount to 'custody,' Ross is not 'claiming the right to be released' from 'custody' and his special assessment cannot serve as the basis for a claim under section 2255."). So the district court did not err by denying Amaya's claim for relief.

Amaya says that this conclusion conflicts with *Ray v. United States*, 481 U.S. 736 (1987) (per curiam). We disagree. In *Ray*, the Supreme Court considered the "so-called 'concurrent sentence doctrine.'" *Id.* at 737. Traditionally, that doctrine permitted a court to "decline to hear a substantive challenge to a conviction when the sentence on the challenged conviction is being served concurrently with an equal or longer sentence on a valid conviction." *Dale v. Haeberlin*, 878 F.2d 930, 935 n.3 (6th Cir. 1989). But in *Ray*, the Court held that it was error to invoke the doctrine to decline to hear the merits of Ray's direct appeal challenging one of his three drug convictions, even though he was serving "concurrent 7-year prison terms" on each. 481 U.S. at 736. Because a ruling in Ray's favor would have relieved him of the obligation to pay the $50 special assessment attached to the challenged count, the Court determined that the sentences

---

**[3]***Weinberger v. United States* is not to the contrary. 268 F.3d 346, 351 n.1 (6th Cir. 2001). There, we held that a petitioner could raise an ineffective assistance of counsel claim challenging restitution through a § 2255 petition. *Id.* But *Weinberger* expressly distinguished restitution cases from cases involving mere fines. *Id.* And a special assessment is more like a fine than it is like restitution. *Weinberger* emphasized, moreover, that its rule concerned the special circumstance of ineffective assistance of counsel claims. *See id.*

were not "in fact . . . concurrent," so the doctrine did not apply. *Id.* at 737. Put differently, the $50 assessment itself constituted a harm, distinct from the prison term, that rendered the doctrine inapplicable. And because "all federal convictions carry a mandatory special assessment, *Ray* is understood to have abolished the concurrent sentence doctrine for direct review of federal convictions." *Al-'Owhali v. United States*, 36 F.4th 461, 466 (2d Cir. 2022) (internal quotation marks and citation omitted); *see United States v. Wade*, 266 F.3d 574, 579 (6th Cir. 2001) (applying *Ray* on direct appeal); *United States v. Ware*, 282 F.3d 902, 906 (6th Cir. 2002) (same).

But Amaya's case does not come to us on direct review. He seeks relief under the federal habeas statute, 28 U.S.C. § 2255. And it has "long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *United States v. Addonizio*, 442 U.S. 178, 184 (1979). To attack a final judgment through a § 2255 petition, Amaya must "claim[] the right to be released" from "custody." 28 U.S.C. § 2255(a). The $100 special assessment does not fit the bill, so Amaya is not entitled to relief.

The district court came to the same conclusion but, rather than asking whether Amaya had properly invoked § 2255, the court described its reasoning as resting on the "concurrent sentence doctrine"—the same doctrine rejected with respect to direct appeal in *Ray*. Amaya seeks to frame the case this way too, but this framing does not help him. The concurrent sentence doctrine functions "[a]s a species of harmless-error analysis." *Al-'Owhali*, 36 F.4th at 466 (internal quotation marks and citation omitted). It aims to conserve judicial resources by permitting courts to avoid adjudicating issues when a favorable ruling could not affect prison time or alleviate some other harm. *Kassir*, 3 F.4th at 561–62. In *Ray*, the $50 special assessment was sufficient prejudice to require consideration of Ray's direct appeal, even though vacating the underlying conviction would not have affected his prison term. But this is a § 2255 petition, not a direct appeal. And the statute itself tells us what sort of relief a petitioner may seek. Custody lies "at the center of the collateral proceeding" so "the prejudice required to obtain relief must ultimately relate to the challenged custody." *Kassir*, 3 F.4th at 566; *see also Ruiz v. United States*, 990 F.3d 1025, 1032–33 (7th Cir. 2021) (declining to review Ruiz's conviction "in the face of seven remaining and valid life sentences" because "§ 2255 serves as a remedy to contest

a prisoner's custody—not the imposition of fines or other special assessments").[4]  Amaya has made no argument that vacating his conviction would affect his custody because his sole request for monetary relief does not suffice.  So he has not shown the kind of prejudice that could state a claim under the plain terms of § 2255 (whether or not the concurrent sentence doctrine would otherwise apply).

* * *

We AFFIRM.

---

[4] Amaya places great emphasis on *United States v. Brown*, No. 20-6409, 2022 WL 2135265 (6th Cir. Mar. 16, 2022) (order).  But that unpublished order does not bind us, nor does it address the question we face here. *Brown* involved the First Step Act and 18 U.S.C. § 3582(c)—neither of which requires that a petitioner be seeking "release" from "custody."  *See* 2022 WL 2135265, at *1.