**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert A. ANDERSON, Defendant–**
**Appellant.**

No. 94–6122.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 20, 1995.

Decided Jan. 10, 1996.*

---

* This decision was originally filed as an "unpublished decision" on January 10, 1996. On February 12, 1996, the court designated the opinion as one recommended for full-text publication.

Terry M. Cushing, Asst. U.S. Atty. (briefed), Julie Brown Apperson, Asst. U.S. Atty. (argued), Louisville, KY, for plaintiff-appellee.

C. Fred Partin (argued and briefed), Bart Adams, Louisville, KY, for defendant-appellant.

Before: MERRITT, Chief Judge; KENNEDY, Circuit Judge; JOINER, District Judge.[**]

KENNEDY, Circuit Judge.

Defendant Robert A. Anderson appeals from a jury verdict finding him guilty of conspiracy to possess and distribute cocaine and of attempt to possess and distribute cocaine. Defendant raises seven issues for review: whether his conspiracy verdict can stand when two codefendants indicted as co-conspirators were acquitted; whether he can be convicted of attempt when he and his codefendants were charged both with attempt and aiding and abetting, but the two codefendants were acquitted; whether the judge properly instructed the jury on his entrapment defense; whether there was sufficient evidence that he was predisposed to commit the crimes; whether his sentence was improperly adjusted upward for his three prior drug felonies; whether he was improperly sentenced for having purchased five kilograms of cocaine when the government offered the cocaine at a price below market value; and whether the District Court erred in denying defendant's motion for a new trial based upon a claim of ineffective assistance of counsel without holding an evidentiary hearing. For the reasons stated below, we affirm.

## I

Defendant was indicted with Victor Anderson and Marlon Miller for conspiracy to possess with intent to distribute cocaine and for attempting to possess with intent to distribute cocaine. The indictment was handed down after police arrested the three individuals on April 3, 1993 in a government sting operation. Defendant had been approached by a confidential government informant, Jack Hillerich, who had heard rumors that defendant was interested in purchasing

[**] The Honorable Charles W. Joiner, United States District Judge for the Eastern District of Michigan, sitting by designation.

cocaine. Hillerich and defendant negotiated for the price and amount. Defendant wrote on a slip of paper that he was accustomed to paying $22,500 for a kilogram of cocaine. Hillerich offered to supply defendant with cocaine at $9500 per kilogram, and defendant placed an order for fifteen kilograms of cocaine. On April 2, 1993, defendant went to Hillerich's residence to put the finishing touches on the deal. Defendant spoke about his abiding desire to secure a regular supplier. Hillerich arranged with DEA and Metro Narcotics agents to have sixteen kilograms of cocaine available at his residence for purchase by defendant. Defendant arrived at Hillerich's residence on April 3, 1993. When Hillerich explained that his source had given him an extra kilogram, defendant said that he would buy the extra drugs and sell it to "one of his other little buddies." While waiting for the money to arrive and while testing the drugs, defendant placed several calls to others to inform them that the drugs had arrived and that he had a greater quantity than they had expected. Defendant called his home number and asked Victor Anderson and Marlon Miller to bring a bag containing $114,130 to Hillerich's residence. After Victor Anderson and Marlon Miller had brought the money to Hillerich's residence and left, the police entered Hillerich's home and arrested defendant. Victor Anderson and Marlon Miller were subsequently arrested. A jury acquitted Victor Anderson and Marlon Miller on both counts while finding defendant guilty on both counts. Defendant received a life sentence under 21 U.S.C. § 841(b)(1)(A) (West Supp.1995) because of the amount of drugs purchased and prior felony drug convictions.

## II

■ Defendant argues that his conviction for conspiracy to possess and distribute cocaine must be set aside because Victor Anderson and Marlon Miller were acquitted on this charge and there was insufficient evidence to establish a conspiracy with other unnamed conspirators. When reviewing a challenge to a jury verdict raising a claim of insufficient evidence, we view the evidence in the light most favorable to the government and must affirm if any rational trier of fact

could have found defendant guilty beyond a reasonable doubt. *United States v. Schultz,* 855 F.2d 1217, 1221 (6th Cir.1988).

■ In *United States v. Williams,* 503 F.2d 50 (6th Cir.1974), which defendant cites as authority, we held that "[w]here all other alleged coconspirators are acquitted, the conviction of one person for conspiracy will not be upheld." *Id.* at 54. Yet the scope of *Williams* has been limited. In *United States v. Sandy,* 605 F.2d 210, 216 (6th Cir.), *cert. denied,* 444 U.S. 984, 100 S.Ct. 490, 62 L.Ed.2d 412 (1979), we noted that "inconsistent jury verdicts are not fatal to a conviction . . . .:"

> [W]e think that the rule in *Williams* and like cases is necessarily confined to those circumstances in which the allegations of the indictment and the proofs at trial admit of no other conspiratorial agreement than that existing between the one convicted defendant and other conspirators, all of whom have been acquitted of the specific charge.

*Id.* Moreover, as defendant acknowledges, other courts have held that a defendant may be convicted of conspiracy when the indictment refers to unnamed or unknown conspirators. In a case presenting similar facts to those here, the Second Circuit wrote:

> We have held . . . that superficially inconsistent conspiracy determinations in the same proceedings . . . are permissible if there is evidence that the defendant conspired with "others unknown" . . . at least so long as the indictment mentions "others" . . . .

*United States v. Rodriguez,* 983 F.2d 455, 459 (2d Cir.1993) (citations and internal quotations omitted); *see also United States v. Klein,* 560 F.2d 1236, 1242 (5th Cir.1977), *cert. denied,* 434 U.S. 1073, 98 S.Ct. 1259, 55 L.Ed.2d 777 (1978). Considering the limit put on *Williams* by *Sandy,* and other Circuits' helpful analyses, we hold that an individual's conviction for conspiracy may stand, despite acquittal of other alleged coconspirators, when the indictment refers to unknown or unnamed conspirators and there is sufficient evidence to show the existence of a

conspiracy between the convicted defendant and these other conspirators.

■ The record presents ample evidence that defendant conspired "with other persons known and unknown to the Grand Jury." Defendant told Hillerich that he was going to sell an extra kilogram of cocaine "to my other little buddy." The government had tapes of defendant making a telephone call in which he said "it's 16 instead of 15" kilograms of cocaine. He placed another call to a "Mike," urging him to get "Big Gene" to bring the money for the extra kilogram of cocaine. Moreover, defendant noted that his sister Leslie would be delivering the money and testing the cocaine. While making the final deal with the confidential informant, defendant used his cellular phone to call someone named Smoke. Defendant informed Smoke that the drugs had arrived and that he should come out—presumably to pick up the drugs. Finally, defendant was able to procure $115,000 to purchase the cocaine at a time when he claims to have been facing serious financial difficulties. Notwithstanding his claim that the money was from a settlement from his mother's death six months prior, a rational trier of fact could reasonably find beyond a reasonable doubt on these facts that defendant was conspiring with others to purchase and distribute cocaine.

### III

■ Defendant next argues that the second count on which he was found guilty must be set aside because that count speaks of his aiding and abetting Victor Anderson and Marlon Miller. Because they were acquitted, defendant argues, there was no one he could aid or abet. Defendant misreads count two. It reads as follows:

> From on or about the 30th day of March, 1993, to on or about the 3rd day of April, 1993, in the Western District of Kentucky, Jefferson County, Kentucky, and elsewhere, **ROBERT ANTHONY ANDERSON, VICTOR B. ANDERSON,** and **MARLON K. MILLER**, defendants herein, aided and abetted by each other, did knowingly and intentionally attempt to commit an offense against the United

States, that is Title 21, United States Code, Section 841(a)(1), to possess with intent to distribute Cocaine, a Schedule II controlled substance as defined by Title 21, United States Code, Section 812.

> In violation of Title 21, United States Code, Section 846 and Title 18, United States Code, Section 2.

The indictment gave defendant notice that he was being charged under count two both with being an aider and abettor and with the substantive crime of attempt. Indeed, the punctuation of the indictment sets off the "aided and abetted" phrase from the crime of attempt to possess cocaine with intent to distribute. The jury was entitled to find defendant guilty of the substantive crime of attempt even though his codefendants were found not guilty of attempt or aiding or abetting his attempt.

### IV

■ Defendant also argues that the judge incorrectly instructed the jury on his entrapment defense. Specifically, defendant argues that the jury instructions did not comply with language in *Jacobson v. United States,* 503 U.S. 540, 547–49, 112 S.Ct. 1535, 1540, 118 L.Ed.2d 174 (1992) by not informing the jury "that the government was required to show that [Anderson] was disposed to commit his crime prior to his initial contact with government agents." As a preliminary matter, defendant waived his right to appeal the jury instructions by not making a contemporaneous objection. *United States v. Sturman,* 951 F.2d 1466, 1475–76 (6th Cir. 1991), *cert. denied,* 504 U.S. 985, 112 S.Ct. 2964, 119 L.Ed.2d 586 (1992). Thus, we review only for plain error. *United States v. Sherrod,* 33 F.3d 723, 724 (6th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1317, 131 L.Ed.2d 198 (1995). Moreover there was no error in the instruction given. The judge quoted verbatim the Sixth Circuit's Pattern Jury Instruction 6.03: "The government has the burden of proving beyond a reasonable doubt that the defendant was already willing to commit the crime." The phrase "already willing to commit the crime" adequately conveys the sense of "prior to first being approached by Government agents," *Jacobson,*

503 U.S. at 549, 112 S.Ct. at 1540. Although it might be desirable to conform to the Supreme Court's language, there is no requirement that it do so.

### V

■ Defendant next argues that the jury verdict rejecting his entrapment defense should be set aside. Defendant claims that he was not predisposed to purchase the cocaine but that he was forced into the purchase by a government informant's importuning and by economic pressures. We must affirm a jury's denial of an entrapment defense unless we determine, viewing the evidence in the light most favorable to the government, that no reasonable juror could have concluded beyond a reasonable doubt that the defendant was predisposed to commit the offense. *United States v. Clark,* 957 F.2d 248, 250 (6th Cir.1992).

■ Defendant claims that he was approached by a government informant, Hillerich, who knew of defendant's past drug offenses and financial straits, importuned defendant to sell drugs, and offered cocaine to defendant at a price well below what defendant was used to paying.

The government presented overwhelming evidence that defendant was predisposed to commit the offense. Defendant was taped telling Hillerich during initial negotiations of his need for a "regular thing" at a good price. Defendant, using the code words "brick layer" for cocaine supplier, was taped telling Hillerich that "I been lookin' for a good brick layer for the longest and you don't understand man I been I been out, I been out for 3 years and I've been huntin' for a brick layer for the longest. . . ." Furthermore, defendant told the government informant that he had been waiting on something like this to "come my way." Finally, Hillerich testified that he first approached defendant only after hearing on the street that defendant was looking for a drug supplier.

After reviewing this evidence, we cannot say that a reasonable juror could not find that defendant was predisposed to commit the offenses for which he was convicted.

### VI

■ Defendant next argues that his prior drug convictions were all one related scheme and that the judge incorrectly imposed an enhanced sentence of mandatory life imprisonment by counting them as separate offenses. Under 21 U.S.C.A. § 841(b)(1)(A) (Supp.1995), anyone who violates 21 U.S.C. § 841(a) by possessing, *inter alia,* five kilograms or more of cocaine "after two or more prior convictions for a felony drug offense have become final . . . shall be sentenced to a mandatory term of life imprisonment without release. . . ." Life sentences under § 841(b) "are triggered by predicate criminal episodes that occur at distinct times." *United States v. Hughes,* 924 F.2d 1354, 1361 (6th Cir. 1991), citing *United States v. Blackwood,* 913 F.2d 139, 146–47 (4th Cir.1990). In *Blackwood,* a defendant had received a mandatory life sentence under 841(b) when the police found marijuana in the defendant's truck and then found a larger cache of marijuana in defendant's motel room two hours later; as a result the defendant received two convictions for possession. 913 F.2d at 145. The Fourth Circuit rejected the life sentence, finding that the two possession convictions were "no more than two components of a single act of criminality. . . ." *Id.*

■ At the time he purchased fifteen kilograms of cocaine from the government informant, defendant had three prior felony drug convictions. In the first predicate felony conviction, defendant was indicted with Andrew Anderson, Jr., and pled guilty to trafficking in cocaine in Jefferson County, Kentucky on December 16, 1987. In the second predicate conviction, a federal offense, defendant was indicted and convicted, with Marvin L. Grant, of conspiring to possess with intent to distribute cocaine on or about April 20, 1988 and for possession with intent to distribute on May 17, 1988 in the Western District of Kentucky. In the third predicate felony conviction, defendant was charged in Clark County, Indiana with dealing in cocaine on April 1, 1988 and on April 21, 1988 and with conspiring to deal in cocaine with Marvin L. Grant between April 1, 1988 and April 21, 1988. Defendant ultimately pled guilty to possession of cocaine.

Defendant received concurrent sentences for these three felony drug convictions.

Defendant argues that these convictions were related and should be treated as one conviction. He further contends that they are related because he received concurrent sentences.

Defendant's prior felony convictions occurred at different times, at different places, and with different people. As this Court has noted, "[t]he majority of courts have concluded that if the predicate offenses occurred on occasions different from one another, Congress intended that they not be regarded as a single criminal episode." *United States v. Roach*, 958 F.2d 679, 684 (6th Cir.), *cert. denied*, 506 U.S. 845, 113 S.Ct. 135, 121 L.Ed.2d 88 (1992) (internal quotations omitted). Thus defendant's three prior felony drug convictions simply are not "components of a single act of criminality...." *Blackwood*, 913 F.2d at 145. Moreover, defendant's receipt of concurrent sentences for these three prior felony drug convictions does not mean that the convictions were part of the same criminal episode. *United States v. Liquori*, 5 F.3d 435, 438 (9th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 738, 126 L.Ed.2d 701 (1994); *cf. United States v. Warren*, 973 F.2d 1304, 1310 (6th Cir.1992).

## VII

■ Defendant contends that his sentence enhancement to life imprisonment should be reversed because the government encouraged him to purchase more cocaine than he would have otherwise bought. Defendant's life sentence was based on his purchase of more than five kilograms of cocaine from the government agent when he had two or more prior felony drug convictions. *See* 21 U.S.C.A. § 841(b)(1)(A) (Supp.1995). The Sentencing Guidelines deal with this problem through Application Comment 15 to § 2D1.1, which reads:

If, in a reverse sting (an operation in which a government agent sells or negotiates to sell a controlled substance to a defendant), the court finds that the government agent set a price for the controlled substance that was substantially below the market value of the controlled substance, thereby leading to the defendant's purchase of a significantly greater quantity of the controlled substance than his available resources would have allowed him to purchase except for the artificially low price set by the government agent, a downward departure may be warranted.

Here, as defendant notes, the government offered to sell him cocaine at $9500 per kilogram, a price less than half of the market value.

The District Court recognized that the undervalued cocaine increased the amount of cocaine defendant bought. Accordingly, the court recalculated the amount of cocaine defendant would have purchased with the money he brought by using the price on a slip of paper where defendant had written that he was accustomed to paying $22,500 per kilogram of cocaine. Based on this amount, the District Court found that defendant would still have purchased just slightly more than five kilograms with the $114,130 he brought to the informant's house.

■ Defendant argues that the court should have relied on a higher estimate of the market value of cocaine offered by LaPugh Rutledge in a civil forfeiture proceeding against the home owned by his brother in which defendant lived; this higher amount, between $25,000 and $30,000, would have resulted in the purchase of less than five kilograms for the $114,130. Indeed, defendant argues that the government should be estopped from using the $22,500 figure in this case in view of its use of the $25,000–$30,000 figure in the civil forfeiture action and then using the $22,500 figure in this case. Defendant's argument is misplaced. In the earlier civil forfeiture proceeding, *United States v. 2112 Crums Lane*, Rutledge testified that on ten or twelve occasions he had sold a kilogram of cocaine, at a price of between $25,000 and $30,000 per kilogram, to *Andrew* Anderson, Robert's older brother. Indeed, Rutledge testified that he never sold cocaine to defendant. Under the circumstances, estoppel does not apply. The price at which defendant would purchase cocaine was not litigated in that case.

Equitable estoppel enables a party to avoid litigating, in the second proceeding, claims which are plainly inconsistent with those litigated in the first proceeding. Because the doctrine is intended to ensure fair dealing between the parties, the courts will apply the doctrine only if the party asserting the estoppel was a party in the prior proceeding and if that party has detrimentally relied upon his opponent's prior position.

*Edwards v. Aetna Life Insurance Co.*, 690 F.2d 595, 598 (6th Cir.1982). Thus, the government cannot be restricted to the price established in the earlier proceeding.

The District Court simply relied on the figure defendant himself indicated was the price he usually paid for a kilogram: $22,500. Indeed, we cannot think of a better figure to use in such a circumstance, for the price defendant "was used to paying" is the best estimate of the subjective value defendant placed on the cocaine he was purchasing from the government informant. Thus, the District Court did not err in imposing the life sentence enhancement on defendant.

## VIII

 Finally, defendant claims that the court erred by not holding a hearing on his motion for a new trial alleging incompetence of his trial counsel. The decision to grant or deny a motion for a new trial is entirely within the discretion of the district court, and we will not reverse absent a showing of an abuse of discretion. *United States v. Turner*, 995 F.2d 1357, 1364 (6th Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 282, 126 L.Ed.2d 232 (1993). The question of whether to hold an evidentiary hearing before deciding a motion for a new trial is in the discretion of the trial court. *United States v. O'Dell,* 805 F.2d 637, 643 (6th Cir.1986), *cert. denied,* 484 U.S. 859, 108 S.Ct. 170, 98 L.Ed.2d 124 (1987).

 Simultaneous with the filing of his motion for new trial with the District Court, defendant filed a motion with this Court for remand to the District Court. Our order denied his motion without prejudice noting defendant's right to file a timely notice of appeal should the District Court deny the motion. After the District Court rejected defendant's motion for a new trial on March 2, 1995, defendant filed no timely notice of appeal. Thus, we lack jurisdiction to entertain this issue on appeal.

## IX

For the reasons stated above, defendant's sentence is **AFFIRMED**.