Affirmed by unpublished opinion. Judge HARRIS wrote the majority opinion, in which Judge CHUANG joined. Judge AGEE wrote a dissenting opinion.
Unpublished opinions are not binding precedent in this circuit.
HARRIS, Circuit Judge;
Dinah R. Gunther, a former employee of Deltek, Inc., alleges that Deltek fired her from her position as a financial analyst in retaliation for whistleblowing activity, in violation of the whistleblower protections of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A. An Administrative Law Judge (“ALJ”) conducted a twelve-day hearing on Gunther’s complaint, during which she heard testimony from multiple witnesses presenting two very different versions of the events immediately preceding Gunther’s termination. Crediting Gunther’s account and deeming Deltek’s explanation for the firing pretextual, the ALJ found Deltek liable for retaliation. And after additional evidence and briefing were presented, the ALJ assessed damages against Deltek, including an award of four years of front pay to Gunther. The Department of Labor’s Administrative Review Board (“ARB” or “Board”) affirmed.
Deltek now appeals, asking us to reverse the finding of retaliation and to overturn the front pay award. But we owe deference to the findings of the ALJ and the *323 Board and must uphold them so long as they are supported by substantial evidence and reached through application of the correct legal standards. Under that deferential standard, we affirm.
I.
A.
Deltek, a Virginia-based software provider, hired Gunther in October 2008 as a financial analyst in its Information Technology (“IT”) Department.[1] Gunther, a former executive assistant and workflow manager, had been unable to move into a finance position with her last employer because she lacked a college degree. Once hired by Deltek, she planned to take advantage of the company’s tuition reimbursement program and work toward a degree, hoping for a promotion to senior financial analyst.
Deltek uses Verizon Business (“Verizon”) as a vendor for information technology services. Deltek’s IT Department commonly raised billing disputes with Verizon, as permitted by the companies, with mixed results; some, but not all, of the disputed amounts were credited to Deltek’s account. Almost from the start of her Deltek employment, Gunther was concerned about the lack of clear procedures and supporting documentation for invoicing generally, and about Verizon invoicing in particular. Ultimately, Gunther would become convinced that Deltek employees were deliberately subjecting Verizon invoices to baseless disputes in an effort to hide a telecommunications budget shortfall and obfuscate the true financial condition of the IT Department.
Gunther came to this conclusion in part through her work with Chris Reynolds, a Project Manager in the IT Department who had concerns similar to her own. Reynolds, a former Verizon employee, was responsible for managing the relationship between Deltek and Verizon, and his duties included reviewing billing disputes between the companies, a task with which Gunther assisted. Reynolds determined that Deltek was raising a number of unjustified billing disputes; at the hearing before the ALJ, presented with six disputes raised by Deltek, Reynolds opined that five were baseless. Reynolds shared his views with Gunther, and by' the spring of 2009, Gunther believed that they had “uncovered massive fraud and a pattern of abusing the dispute process as to the Verizon invoices.” J.A. 81.
Gunther’s early efforts to bring the Verizon problem to the attention of management were, in her view, unsuccessful, and led to hostility from her immediate supervisor and negative changes to her work status. By April 2009, Gunther was ready to take more formal action. On April 20, 2009, she hand-delivered a letter complaint to Deltek’s General Counsel, David Schwiesow, and submitted the same letter to Deltek’s audit committee, indicating by a “cc” that a copy also had been sent to the U.S. Securities and Exchange Commission (“SEC”). Gunther’s letter reported that Deltek employees were raising fraudulent billing disputes with Verizon to avoid timely payment of fees and conceal a large budget variance from Deltek management, auditors, and shareholders, as well as the SEC. Gunther also alleged that she had been ignored or punished for raising these *324 issues with her supervisors. Reynolds filed a similar complaint.
Schwiesow, the General Counsel, took immediate action, informing Deltek’s CEO of the complaints and then meeting separately with Gunther[1] and Reynolds. In his meeting with Gunther on April 21, Schwie-sow assured Gunther that her complaints would be taken seriously and asked her to gather information. And Deltek did conduct an investigation, ultimately finding no improper activity or retaliation by Deltek employees.
Gunther, however, was not entirely reassured by her meeting with Schwiesow. After seeing employees shredding documents, she became concerned about the integrity of documents relevant to her complaint, and began emailing some of them to her personal email account, which she shared with her husband. She also became increasingly upset about what she viewed as her mistreatment at the hands of her supervisor and other coworkers.
The result was a paid leave of absence for Gunther. On May 18, 2009, Gunther told Holly Kortright, Deltek’s Vice President of Human Resources, that she was experiencing stress and other medical issues that were affecting her work, and Kortright offered her a paid temporary leave. Gunther accepted by email, laying out certain conditions — including her right to receive full compensation and benefits and to terminate the leave at her discretion with 24 hours’ notice to Deltek — to which Kortright agreed. Shortly after her leave began in May, Gunther filed a complaint with the Occupational Safety and Health Administration (“OSHA”), alleging retaliation for whistleblowing activities in violation of the Sarbanes-Oxley Act.
Counsel for Gunther and Deltek began negotiating a settlement that would result in Gunther’s separation from Deltek. But the parties had trouble agreeing on terms. And in the meantime, Gunther became concerned about the status of her employment at Deltek, given that she received both a notice of continuation of health coverage under the Consolidated Omnibus Budget Reconciliation Act, or COBRA, suggesting that her health benefits had been terminated, and a separate notice that Deltek had reversed the deposit of a recent paycheck.
Things came to a head on Saturday, October 24, when Gunther, after directing her counsel to end settlement negotiations, sent an email to Kortright saying that Deltek was in arrears on her employee benefits and paychecks and that she would be reporting" to work at 9:00 a.m. on Monday, October 26. At 12:18 a.m. on October 26, just nine hours before Gunther was to report to Deltek, Schwiesow responded with an email telling Gunther that because she was represented by counsel, Deltek would be unable to discuss her employment with her if she came into the office.
Nevertheless, Gunther — who testified that she did not recall reading Schwiesow’s midnight email before leaving for work— returned to Deltek on Monday, October 26, setting in motion the events most critical to this case, and most contested by the parties. This much is undisputed: Gunther, with her husband accompanying her in a separate vehicle, arrived at Deltek and then went alone to the Human Resources Department, where she was told by Kort-right’s assistant that she would have to wait for Kortright’s arrival. After 16 or 20 minutes, Gunther met with Kortright and Deltek’s in-house counsel Salman Ahmad, and Ahmad told Gunther that he could not speak with her about her employment because she was represented by counsel. In response to Gunther’s questions, Ahmad assured Gunther that she still had a job with Deltek, but also told her that she could not return to work that day. After *325 the meeting, Gunther left the building and, in the parking lot, responded to questions from her husband, who was holding a video camera, while Kortright and Ahmad watched the scene from the window of Kortright’s office. Finally — and, as it turns out, critically — Gunther secretly made an audio recording of the meeting with Ahmad and Kortright.
Beyond that, the parties’ accounts diverge. According to Deltek, and in particular the testimony of Kortright, Gunther’s behavior on October 26 was “confrontational” and “disruptive.” Gunther intimidated Kortright’s assistant by standing and staring at her, refusing to sit in a conference room while she waited for Kortright; she was “confrontational” and “demanding,” using a “strong tone,” in her meeting with Kortright and Ahmad; and her interaction with her husband in the parking lot both blocked other employees from entering and indicated that Gunther had no intention of actually returning to work. But after listening to the audio tape made by Gunther and reviewing the evidence, the ALJ rejected that characterization, finding no evidence that Gunther behaved in an inappropriate or threatening manner or that her parking-lot interview with her husband caused any disruption.
On the next day, October 27, 2009, Kort-right sent Gunther a letter terminating her employment at Deltek. According to the letter, Gunther was being terminated because of her “disruptive and very concerning” behavior at Deltek the prior day, and specifically her “confrontational” posture toward Ahmad and the “disruptive” videotaped interview with her husband. J.A. 41-42. That brought to an end the employment relationship between Gunther and Deltek, and Gunther promptly amended her OSHA complaint to include her termination as a retaliatory action.
Even after the termination, the parties’ relationship continued to deteriorate. In November 2009, Gunther and her husband each sent letters to Kortright and Deltek’s CEO, respectively, which Deltek characterized as “threatening” and “aggressive.” J.A. 71. And in the course of its post-termination investigation and preparation for litigation, Deltek discovered not only that Gunther had emailed company documents to her personal email account, but also that she had made secret audio recordings of certain Deltek meetings and exchanged allegedly derogatory instant messages with Reynolds.
B.
In July 2010, the Assistant Regional Administrator for OSHÁ ruled on Gunther’s OSHA complaint, finding that there was no reasonable cause to believe that Deltek had violated the Sarbanes-Oxley Act, 18 U.S.C. § 1514A, which protects from retaliation whistleblowers who report certain kinds of fraud committed by publicly traded companies. Gunther filed a notice of objection and requested a de novo hearing in front of an ALJ. See 29 C.F.R. § 1980.106 (2010).
Following a twelve-day hearing on liability, the ALJ, after dismissing all individual Deltek employees from the case, issued a lengthy decision and order finding that Deltek had retaliated against Gunther in violation of the Sarbanes-Oxley Act. See Gunther v. Deltek, Inc., No. 2010-SOX-00049 (Dep’t of Labor July 31, 2012), J.A. 23-66. As the ALJ explained, to succeed on her Sarbanes-Oxley retaliation claim, Gunther was required, to show by a preponderance of the evidence that (1) she had engaged in protected whistleblowing activity, (2) Deltek was aware of her protected activity, (3) she suffered an unfavorable personnel action, and (4) her protected activity was a “contributing factor” in *326 the unfavorable action. See Jones v. Southpeak Interactive Corp. of Del., 777 F.3d 658, 668 (4th Cir.2015); 29 C.F.R. § 1980.104(e) (2012). If Gunther could make that prima facie showing, then Del-tek could avoid liability only by proving by clear and convincing evidence that it would have taken the same adverse action even in the absence of the protected activity. See Feldman v. Law Enf't Assocs. Corp., 752 F.3d 339, 345 (4th Cir.2014).
On the first element of Gunther’s case, the ALJ found that Gunther engaged in two forms of protected whistleblowing activity: the letter complaint filed with Del-tek management and the SEC in April 2009, and the original OSHA complaint of May 2009. Deltek did not dispute that the filing of a formal complaint or participation in OSHA proceedings generally would constitute protected whistleblowing activity. But for her reports to be protected, as the ALJ explained, Gunther also would need both a “subjective” belief and an “objectively reasonable” belief that the conduct she complained of was illegal, and Deltek argued that Gunther had insufficient education and experience to make such an assessment. The ALJ disagreed, finding that it was clear from the record that Gunther had a subjective belief that Del-tek was engaged in fraud, and that as a result of her collaboration with and reliance on the more experienced Reynolds, Gunther’s belief also was objectively reasonable.
The ALJ had no difficulty determining that Gunther had satisfied the second element of her case, showing that Deltek was aware of her April 2009 letter complaint (filed with Deltek management) and her May 2009 OSHA complaint (naming Del-tek). The ALJ also found it clear that Gunther’s termination was an adverse action, satisfying the third element.
On the fourth element, that Gunther’s protected activity was a “contributing factor” in her termination, the ALJ recognized that proximity in time is sufficient to raise an inference of causation, and found that Gunther was terminated almost immediately after the breakdown of the settlement negotiations precipitated by her OSHA complaint. The ALJ also made a finding that the reason for the termination offered by Deltek — Gunther’s “egregious” behavior when she came to work on October 26 — was pretextual. J.A. 52. After listening to Gunther’s audio recording of the events of that day and reviewing the record, the ALJ found that Gunther was not in fact “confrontational” or rude, and that there was no evidence that Gunther “ever took any actions in the workplace toward other employees that were inappropriate or threatening” or that Gunther and her husband had caused any disturbance at Deltek on October 26. J.A. 52-53. In short, the reasons offered by Del-tek for Gunther’s termination were “contradicted by [Gunther’s] tape” and unsupported by the record. J.A. 53.
Accordingly, Gunther satisfied the final element of her prima facie case. And because the ALJ already had rejected Del-tek’s proffered explanation for Gunther’s termination as pretextual, Deltek could not rebut that case by proving — by clear and convincing evidence or, as the ALJ noted, under any standard — that it would have fired Gunther even in the absence of her protected activity. Deltek therefore was liable for retaliation.
After considering additional evidence and briefing by the parties, the ALJ issued a supplemental decision and order awarding damages to Gunther. Gunther v. Deltek, Inc., No. 2010-SOX-00049 (Dep’t of Labor June 5, 2013) (“ALJ Supplemental Decision and Order”), J.A. 58-96. Applying the mandate of the Sarbanes-Oxley *327 Act that an employee who prevails on a retaliation claim “shall be entitled to all relief necessary to make the employee whole,” J.A. 64 (quoting 18 U.S.C. § 1514A(c)(l)), the ALJ awarded Gunther back pay and benefits and also, because the parties agreed that Gunther should not be reinstated at Deltek, four years of front pay — six years less than the ten years Gunther was seeking. The front pay award was based on the ALJ’s finding that without a college degree, it was unlikely that Gunther could obtain a job comparable to her financial analyst position at Del-tek. But four years of front pay combined with a restoration of tuition reimbursement benefits, the ALJ concluded, would be sufficient to make Gunther “whole,” allowing her to complete an undergraduate degree and find a job similar to the one she held with Deltek.
The ALJ also rejected Deltek’s argument that its liability should be limited under the after-acquired evidence doctrine to the brief time period between Gunther’s firing and Deltek’s discovery of misconduct for which it would have terminated Gunther: the post-termination letters to Del-tek from Gunther and her husband, Gunther’s recording of Deltek meetings and forwarding of Deltek documents to her personal email account, and disparaging instant messages between Gunther and Reynolds. On the record before her, the ALJ found, Deltek had not shown that any of that conduct would have justified or in fact led to Gunther’s termination had Del-tek known of it earlier, rendering the after-acquired evidence doctrine inapplicable.
Deltek appealed to the ARB.[2] The Board affirmed, holding that both the liability finding and the damages award were supported by substantial evidence and that the ALJ’s legal conclusions were in accordance with law. Gunther v. Deltek, Inc., Nos. 13-068, 13-069, 2014 WL 7227263 (Dep’t of Labor Nov. 26, 2014) (“ARB Final Order”), J.A. 14-18. Deltek timely appealed the Board’s judgment to this Court.
II.
A.
Our review of the Board’s decision is limited. Under the Administrative Procedure Act, which governs Sarbanes-Oxley retaliation claims,[3] we must affirm the Board’s decision unless it is “arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,” or is “unsupported by substantial evidence.” 5 U.S.C. § 706(2)(A), (E); see Platone v. U.S. Dep’t of Labor, 648 F.3d 322, 326 (4th Cir.2008). We defer to the Board’s interpretation of § 1514A of the Sarbanes-Oxley Act. See Welch v. Chao, 636 F.3d 269, 276 (4th Cir.2008); see also Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 843-44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). And so long as the Board’s findings are “supported by substantial evidence and [] reached based upon a correct application of the relevant law,” we will uphold them. See Craig v. Chater, 76 F.3d 685, 589(4th Cir.1996). We also defer to the factual findings of the ALJ, as affirmed by the Board, if they are supported by substantial evidence. Platone, 548 F.3d at 326. And in reviewing *328 for substantial evidence, our role is not to “substitute our judgment” for that of the ALJ or the Board; “we do not undertake to re-weigh conflicting evidence [or] make credibility determinations.” Craig, 76 F.3d at 689. Rather, the “substantial evidence” standard requires only that there be in the record “such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” Platone, 648 F.3d at 326 (internal quotation marks omitted).
B.
Deltek challenges the Board’s liability finding on two grounds, arguing that the ALJ and the ARB erred first in holding that Gunther engaged in protected activity and then in finding that her protected activity was a “contributing factor” in her termination. Because substantial evidence supports the ALJ’s determination, affirmed by the Board, that Gunther complained of conduct that she reasonably believed to be illegal and that her complaints contributed to her termination, we affirm.
1.
As discussed above and explained by the ALJ, Gunther’s April 2009 letter complaint and May 2009 OSHA complaint constituted “protected activity” under the Sarbanes-Oxley Act only if they were based on her “reasonable belief’ that the Deltek conduct she was reporting was in violation of the securities laws and regulations identified by the statute. See 18 U.S.C. § 1514A(a)(l), And as the ALJ recognized, that “reasonable belief’ standard has both a subjective and an objective component: Gunther must show that she subjectively believed Deltek’s conduct to be illegal, and that her belief was “objectively reasonable.” See Welch, 536 F.3d at 275. The ALJ determined, in a finding affirmed by the Board, that Gunther satisfied that standard, and we find no fault with her analysis.
There is ample record evidence to support the ALJ’s finding that Gunther, who raised her concerns early and often, both informally and formally, and even in the face of what she perceived as adverse treatment, genuinely believed Deltek to be violating the law. Deltek’s principal argument is that any subjective belief Gunther may have had was not “objectively reasonable,” because without a college degree or relevant work experience, Gunther lacked sufficient knowledge to make that judgment. But the ALJ rejected that contention, determining that in forming her belief Gunther reasonably relied on her close dealings with Reynolds, who did have extensive experience in Verizon invoicing. Consideration of what Gunther learned from Reynolds was consistent with governing law, which, in evaluating objective reasonableness, focuses on the particular “factual circumstances” of the putative whistleblower, see Lockheed Martin Corp. v. Admin. Review Bd., 717 F.3d 1121, 1132 (10th Cir.2013), which may include what he or she learns from coworkers, see, e.g., Mahony v. KeySpan Corp., No. 04 CV 554 SJ, 2007 WL 805813, at *1-2, 6 (E.D.N.Y. March 12, 2007) (reasonable for employee, who had taken only a few accounting classes, to rely on judgment and expertise of more experienced employee in forming belief that unlawful conduct was occurring). And there is substantial evidence to support the ALJ’s. finding, affirmed by the ARB, that Gunther in fact relied on Reynolds, who was himself a “credible, convincing witness at the hearing,” J.A, 48.
2.
Deltek’s more sustained argument is that the ALJ and the Board erred when they found the necessary causal link be *329 tween Gunther’s 2009 letter complaint and 2009 OSHA complaint, on the one hand, and her termination, on the other. Again, we disagree. The ALJ and the Board properly applied the Sarbanes-Oxley standard for causation — which is not a high one — to factual determinations supported by substantial record evidence, and we therefore affirm.
As both the ALJ and the Board explained, to satisfy the “causation” element of her prima facie case, Gunther had to show only that her protected activity “contributed to” her termination. 49 U.S.C. § 42121(b)(2)(B)(i). The “contributing factor” standard, we have recognized, is a “broad and forgiving” one, Feldman, 752 F.3d at 350, distinctly more protective of plaintiffs than the familiar McDonnell Douglas framework applied in Title VII cases, see Araujo v. N.J. Transit Bail Operations, Inc., 708 F.3d 152, 158 (3d Cir.2013). Gunther could satisfy this “rather light burden” by showing that her protected activities “tended to affect [her] termination in at least some way,” whether or not they were a “primary or even a significant cause” of the termination. Feldman, 752 F.3d at 348.
In this case, application of the “contributing factor” standard turns critically on one key finding by the ALJ, affirmed by the Board: that the explanation proffered by Deltek for Gunther’s termination was pretextual — or, more colloquially, not true. Deltek’s position, tracking Kortright’s termination letter to Gunther, is that Gunther was fired not for whistleblowing activity, but as a result of her “egregiousfly]” disruptive and confrontational conduct at Del-tek on October 26, 2009. J.A. 52. But after a painstaking review of the evidence, and having listened to Gunther’s audio recording of the day’s events “more than once” and observed Gunther’s demeanor at the twelve-day hearing, the ALJ rejected that contention as “contradicted by the tape” and unsupported by the evidence. J.A. 52-53 & n. 29. Gunther was not, as Deltek alleged, “confrontational”; instead, she was “[a]t all times ... calm, quiet, and (although she repeated herself) polite.” J.A. 52. There was no evidence that Gunther “ever took any actions in the workplace toward other employees that were inappropriate or threatening.” J.A. 53. And even the alleged parking-lot “disruption” turned out to be unsupported by the record, which included “no testimony or other evidence” that Gunther and her husband actually blocked traffic or hampered pedestrians outside the Deltek offices. J.A. 52-53.[4]
That finding, affirmed by the Board, is supported by.substantial evidence and entitled to deference. Over the course of a twelve-day hearing, the ALJ had ample opportunity to evaluate the credibility of the witnesses before her, and to assess their testimony in light of the audio tape of the October 26 meeting. Particularly when a factual finding rests on a credibility determination, it “should be accepted by the reviewing court absent exceptional circumstances” — where, for instance, it rests on “an inadequate reason or no reason at all” or is contradicted by other findings of fact. N.L.R.B. v. CWI of Md., Inc., 127 F.3d 319, 326 (4th Cir.1997) (internal quotation marks omitted). Here, the ALJ fully explained her finding, pointing to rec *330 ord evidence. Deltek cannot show the kind of “exceptional circumstances” that would allow us to set aside the ALJ’s finding of pretext, as affirmed by the Board. See, e.g., id.; Craig, 76 F.3d at 589 (on substantial evidence review, court does not “re-weigh conflicting evidence” or “make credibility determinations”).
And in light of that finding, Deltek’s arguments on appeal are unavailing. Del-tek’s principal claim is that the ALJ and the Board improperly applied the law by failing to recognize that a “legitimate intervening event” — here, Gunther’s confrontational and disruptive conduct on October 26 — can “sever” a causal connection between protected activity and a subsequent adverse employment action, see Feldman, 752 F.3d at 348. But the ALJ and the Board had no occasion to apply that doctrine, given their finding that there was no “legitimate intervening event” because the egregious behavior identified by Deltek had not in fact occurred. Similarly, the ALJ and the Board did not, as Deltek would have it, impermis-sibly second-guess an employer’s judgment as to the wisdom of terminating employees who threaten workplace' safety or comfort. Rather — and entirely appropriately — they evaluated the- truth of Deltek’s allegation that Gunther was in fact such an employee and found the claim pretextual.
Finally, Deltek appears to argue that there is simply no evidence that Gunther’s April 2009 letter complaint or May 2009 OSHA complaint was a “contributing factor” to her termination, and that the ALJ improperly relied only on an attenuated chain of “but-for” causation to determine otherwise. But here again, Deltek’s argument founders on the finding of pretext, which is itself circumstantial evidence of causation. See Bechtel v. Competitive Techs., Inc., No. 09-052, 2011 WL 4915751, *7 (Dep’t of Labor Sept. 30, 2011) (“[I]f a complainant shows that an employer’s reasons for its action are pretext, he or she may, through the inferences drawn from such pretext, meet the evidentiary standard of proving by a preponderance of the evidence that protected activity was a contributing factor.”); cf. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (proof of pretext is a form of circumstantial evidence probative of intentional discrimination that “may be quite persuasive”). Moreover, proximity in time, as the ALJ explained, also is sufficient to raise an inference that protected activity contributes to an adverse action. See Feldman, 752 F.3d at 348. And while six months separated Gunther’s whistleblow-ing complaints in April from her termination in October, the termination did come, the ALJ found, as soon as negotiations around those complaints ended and it became apparent that Deltek could not otherwise settle its conflict with Gunther. Cf. King v. Rumsfeld, 328 F.3d 145, 151 & n. 5 (4th Cir.2003) (even extended period of time between protected activity and adverse action may demonstrate causation where adverse action occurred at “the natural decision point”).[5]
*331 Again, the question before us is not whether the record demands the conclusion that Gunther’s whistleblowing activity “contributed to” her termination, but only whether substantial evidence supports the determination of the ALJ and the Board that Gunther satisfied that forgiving test. See, e.g., Craig, 76 F.3d at 589 (where “evidence allows reasonable minds to differ,” a reviewing court must defer to an agency determination under the substantial evidence standard). Under that standard of review, we have no cause to disturb the determination of the ALJ, as affirmed by the Board, that Gunther made a prima facie showing that her April 2009 letter complaint and May 2009 OSHA complaint contributed to her termination by Deltek.[6]
C.
Deltek separately challenges the damages award to Gunther. First, Deltek argues that the ALJ and the Board erred by failing to apply the after-acquired evidence doctrine, limiting Deltek’s liability for damages because evidence discovered after Gunther’s termination would have led to her firing had the company known of it earlier. Second, Deltek objects to the award of four years of front pay as unduly speculative and without a proper evidentia-ry basis. Again, we think that the determinations of the ALJ and the Board are supported by substantial evidence and consistent with law, and we therefore affirm.
1.
As the ALJ and the Board recognized and all parties agree, the after-acquired evidence doctrine applies in Sarbanes-Ox-ley cases.
Under this doctrine, reinstatement or front pay is inappropriate if an employer discovers evidence of misconduct after it has wrongfully terminated an employee if the misconduct, standing alone, would have justified terminating the employee had the employer known of it at the time of discharge. In such an instance, an employer is only liable for back pay from the date of unlawful discharge to the time this new evidence is discovered.
ALJ Supplemental Decision and Order, J.A. 65 (citing McKennon v. Nashville Banner Publ’g Co., 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995)).
To prevail, an employer must show by clear and convincing evidence that it would have terminated the employee when it discovered the misconduct in question. 49 U.S.C. § 42121 (b)(2)(B)(ii), (iv) (“Relief may not be ordered ... if the employer demonstrates by clear and convincing evi *332 dence that the employer would have taken the same unfavorable personnel action in the absence of that behavior.”); Ameristar Airways, Inc. v. Admin. Review Bd., 771 F.3d 268, 273 (5th Cir.2014). The ALJ found that Deltek failed to offer sufficient evidence that the after-acquired evidence doctrine applied, and the ARB affirmed.[7] And Deltek now faces an even higher burden on appeal: it must show that this finding was unsupported by substantial evidence or, put differently, that there could be no reasonable difference of opinion as to whether Deltek had met the clear and convincing threshold. See Platone, 548 F.3d at 326 (substantial evidence is “such relevant evidence as a reasonable mind might accept as adequate to support a conclusion”). Deltek cannot satisfy that exacting standard.
Deltek points first to its discovery, post-termination, that Gunther had emailed certain Deltek documents to her home email account, shared by her husband, in violation of Gunther’s employment contract and Deltek policies. In connection with that claim, the ALJ recognized Gunther’s understanding that Schwiesow, Del-tek’s General Counsel, had directed her to collect information to support her complaint. And the ALJ made specific findings, affirmed by the Board, that Gunther forwarded to her home account only documents that were relevant to her whistle-blowing reports; that when she did so, she had a reasonable concern that the documents might be shredded by Deltek employees or otherwise destroyed; and that Gunther’s motivation for forwarding the documents was “to support her [Sarbanes-Oxley] allegations.” J.A. 68-69. Distinguishing cases like JDS Uniphase Corp. v. Jennings, 473 F.Supp.2d 697, 703-04 (E.D.Va.2007), in which courts had deemed employees unprotected when they “indiscriminately misappropriated documents containing proprietary information,” J.A. 68, the ALJ concluded, and the ARB agreed, that Deltek had not made the requisite showing that Gunther’s activity would have justified her termination.
On this record and in light of the specific factual findings of the ALJ and the Board, we see no reversible error. Deltek contests the ALJ’s factual findings, but the ALJ cited ample evidentiary support for her conclusions. And under those narrow factual circumstances, we agree that Gunther’s effort to protect selected relevant documents from what she reasonably believed was a risk of destruction, on what she understood to be instructions from Deltek’s General Counsel, would not have justified her termination. Indeed, it is perhaps to Deltek’s credit that it has hot offered much by way of evidence that it would have fired Gunther, or any other employee, for limited efforts to document what is reasonably believed to be fraud: all we have in this record are Deltek’s written policies and Schwiesow’s self-serving testimony that them violation would have led to termination, without any evidence of similar circumstances under which Deltek had fired employees or otherwise enforced its policies against them. Accordingly, we defer to the determination of the ALJ and the Board that Deltek has not made the requisite showing under the after-acquired evidence doctrine.
We also find that substantial evidence supports the determination of the ALJ, affirmed by the Board, that Deltek did not meet its burden of showing that it *333 would have terminated Gunther for any of the other misconduct it identifies. As to Gunther’s surreptitious audio recording of Deltek meetings, we have no reason to question the ALJ’s finding that Deltek failed to cite any company policy or law prohibiting the recordings, and that Schwiesow’s testimony that “this kind of action would not be tolerated” was by itself insufficient to meet Deltek’s burden of proof. J.A. 66. Similarly, in the absence of record evidence that Deltek had terminated other employees for sending instant messages or that no other employee had sent comparable messages, we defer to the ALJ’s finding that Gunther’s instant messages were “trivial in nature” and so “petty” that Deltek could not show that an employee would have been terminated on that ground alone. J.A. 70.
And finally, substantial evidence supports the rejection of the post-termination letters from Gunther and her husband as after-acquired evidence limiting damages. As proof that those letters would have led to Gunther’s termination, Deltek cited only its own characterization of the letters as threatening and aggressive. But the ALJ reviewed Gunther’s letter and concluded that it was neither threatening nor aggressive, and went on to “agree with [its] substance” because it did no more than request a retraction of the mischaracterizations in Kortright’s termination letter. J.A. 71. The ALJ also reviewed the letter sent by Gunther’s husband, and while criticizing its tone, found that its thrust was “simply [ ] to ask Del-tek to refrain from harassing his wife” and that it had been sent without Gunther’s participation. J.A, 71. In light of that record, we have no reason to disturb the determination of the ALJ and the Board that Deltek has not met its significant burden of demonstrating that it would have terminated Gunther for the post-termination letters.
2.
Finally, Deltek challenges the ALJ’s award, affirmed by the ARB, of four years of front pay totaling $300,352, along with tuition reimbursement benefits of $30,000. As the ALJ recognized, reinstatement rather than front pay is the “presumptive and preferred remedy” for unlawful discharge in whistleblower cases. See J.A. 80 (citing Hobby v. Ga. Power Co., Nos. 98-166 & 98-169, 2001 WL 168898 (Dep’t of Labor Feb. 9,2001)). But where, as here, pronounced animosity between the parties leads both of them to advocate against reinstatement, front pay may be an appropriate substitute, as the ALJ concluded.
Neither party has appealed the threshold determination that front pay and not reinstatement was the proper remedy in this ease, and so the only issue before us is the calculation of the front pay award. Under Sarbanes-Oxley, a prevailing employee is entitled to “all relief necessary to make the employee whole,” 18 U.S.C. § 1514A(c)(l), and front pay “is designed to place the complainant in the identical financial position” that she would have occupied had she remained employed or been reinstated. Bryant v. Mendenhall Acquisition Corp., No. 04-014, 2005 WL 1542547, at *6 (Dep’t of Labor June 30, 2005) (internal quotation mark omitted). By their nature, front pay awards are “speculative,” but they “cannot be unduly so,” id. at *7, and it is up to the employee to provide the “essential data necessary to calculate a reasonably certain front pay award.” Id. (quoting McKnight v. Gen. Motors Corp., 973 F.2d 1366, 1372 (7th Cir.1992)). But front pay is an equitable remedy, and given the “infinite variety of factual circumstances” that must be con *334 sidered, front pay awards “rest in the discretion of the court in shaping the appropriate remedy.” Duke v. Uniroyal Inc., 928 F.2d 1413, 1424 (4th Cir.1991).
After laying out the legal standard governing front pay awards, Deltek devotes only a single, largely conclusory paragraph of its brief to its argument on damages.[8] But reading between the lines, Deltek appears to argue in part that the front pay award in this case is “unduly speculative” because Gunther failed to provide the ALJ with “essential, data”, on which to rest a proper award. We disagree. Gunther submitted a proof of damages that included her annual salary and benefits, and the ALJ used that data to calculate the value of four years of front pay, essentially multiplying by four. As is always the case, “some speculation about future earnings [was] necessary,” Barbour v. Merrill, 48 F.3d 1270, 1280 (D.C.Cir.1995) (emphasis in original), but the ALJ and the Board made the reasonable choice to assume that Gunther would have continued to earn the same salary and benefits at Deltek had she not been unlawfully terminated. Indeed, the ALJ was careful to avoid undue speculation, rejecting Gunther’s request to include in the award annual salary increases that were “not guaranteed.” J.A. 83.[9]
The heart of Deltek’s claim, as we understand it, is that the choice of four years as the period for front pay (and perhaps the inclusion of tuition reimbursement benefits for those years) lacked an evidentiary or logical basis. Gunther sought ten years of front pay, arguing that it would take her at least that long to regain the professional status she lost when Deltek fired her. The ALJ rejected that claim, and found that Gunther could obtain a job comparable to the one she held at Deltek, and thus be “made whole,” in four years during which she obtained a college degree. We think that determination, as affirmed by the Board, is supported both by the ALJ’s reasoning and by substantial evidence in the record.
Based on record evidence that Deltek does not contest, the ALJ found that Gunther had worked in administrative and support positions prior to her time at Deltek, and that she had been unable to obtain a finance position from her prior employer because she lacked a college degree. The ALJ also found that Gunther again had been unable to secure a position as a financial analyst after her termination by Deltek and that she was “now unlikely to obtain” comparable employment without an undergraduate degree, “as she did not work for [Deltek] for a *335 sufficient period of time to obtain on-the-job qualifications.” J.A. 82. It followed, the ALJ concluded, that in order for Gunther to be “made whole” as required by statute, she would need the opportunity to earn a college degree, which generally requires four years. Accordingly, the ALJ ordered Deltek to pay four years of front pay, along with the tuition-reimbursement benefits to which Gunther had been entitled when employed.
We cannot agree with Deltek that the ALJ provided no “logical basis” for her ruling, or that her determination is unsupported by substantial evidence. Deltek insists that, contrary to the ALJ’s determination, Gunther could find work as a financial analyst without a college degree, pointing to its own decision to hire Gunther. But the ALJ considered and rejected that claim, finding that Gunther had been unable to obtain.a financial analyst position either before or after her tenure at Deltek, and that Gunther remained unlikely to find such a position without a degree despite the fact that Deltek had been “willing to give [Gunther] a chance” that other employers had not. J.A. 81. And while the ALJ’s assessment of Gunther’s employment prospects necessarily involved some speculation, so too does Deltek’s — and nothing in this record required the ALJ to adopt Deltek’s optimistic prediction about Gunther’s future as a financial analyst without a college degree. Cf. Barbour, 48 F.3d at 1280 (front pay should not be denied because “some speculation about future earnings is necessary, or because parties have introduced conflicting evidence” (emphasis in original)).
Gunther was entitled to be returned to “the identical financial position” that she would have occupied had she not been terminated unlawfully for protected whist-leblowing activities. See Bryant, 2005 WL 1542547, at *6; 18 U.S.C. § 1514A(c)(1) (employee entitled to all relief necessary to be made whole). Consistent with that statutory mandate, the ALJ determined, and the Board agreed, that a four-year front pay award would return Gunther to the position she would have been in but for her termination — that is, employment as a financial analyst. The ALJ’s rationale is fully explained and its findings, as affirmed by the Board, are supported by substantial evidence. Even if “reasonable minds might disagree regarding the amount,” Traxler v. Multnomah Cnty., 596 F.3d 1007, 1014 (9th Cir.2010) (affirming front pay award), the ALJ and the Board did not abuse their discretion in shaping the appropriate front pay remedy in this case. See Duke, 928 F.2d at 1424 (front pay awards rest in equitable discretion of court); Traxler, 596 F.3d at 1014 (holding that district court did not abuse discretion in setting front pay award).
HI.
For the foregoing-reasons, we affirm the judgment of the Administrative 'Review Board.

AFFIRMED.

. The facts of this case are recounted in detail in the ALJ’s two extensive opinions, totaling more than 70 pages. See Gunther v. Deltek, Inc., No. 2010-SOX-00049 (Dep’t of Labor July 31, 2012), J.A. 23-56; Gunther v. Deltek, Inc., No. 2010-SOX-00049 (Dep’t of Labor June 5, 2013) (“ALJ Supplemental Decision and Order’’), J.A. 58-96. We review here the facts most relevant to this appeal, as found by the ALJ.

. Gunther cross-appealed certain determinations by the AU. Those issues are not relevant to this appeal.

. The whistleblower retaliation provision of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A, incorporates the rules and procedures of 49 U.S.C. § 42121(b), which in turn incorporates the Administrative Procedure Act’s standard of review in cases like this, 5 U.S.C. § 706.

. The ALJ did believe that Gunther’s decision to return to work on October 26, without giving Deltek more notice and obtaining permission, was “ill advised.” J.A. 52. But she also found that Gunther’s premature return was not a basis for Gunther’s termination — a finding amply supported by the fact that Gunther retained the right to end her temporary leave at her discretion — and that Deltek had not argued otherwise. See also ARB Final Order, 2014 WL 7227263, at *2.

. That the ALJ relied on both these factors in finding causation is established with “reasonable clarity,” Greater Boston Television Corp. v. FCC, 444 F.2d 841, 851 (D.C.Cir.1970), we think, by the fact that both are analyzed in the "Causal Relationship” section of her opinion. J.A. 51-54. This is not a case, in other words, in which we need "guess” as to whether the ALJ deemed her pretext finding relevant to causation, Greater Boston, 444 F.2d at 851, or “substitut[e]” a factor of our own that the ALJ has not considered, cf. SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). Parsing the ALJ’s language, our dissenting colleague argues that the ALJ tied her pretext finding to the wrong part of the causation inquiry. But that cuts the analysis too fine. In reviewing an agency's reasoning, *331 we demand not "ideal clarity,” Greater Boston, 444 F.2d at 851, but only a discernible path, id., or "rational bridge” between record findings and legal conclusions, Cordova v. Holder, 759 F.3d 332, 340 (4th Cir.2014). It is enough here that the ALJ required Gunther to “establish[ ] a causal relationship by a preponderance of the evidence,” J.A. 51, and in deciding whether she had met that burden, properly took into account not only the events leading up to Gunther’s firing but also Del-tek's pretextual explanation for that firing, J.A. 52-53.

. For much the same reason, Deltek cannot prevail on its alternative argument that even if Gunther made out a prima facie case of retaliation, it rebutted that showing with clear and convincing evidence that it "would have taken the same personnel action in the absence of the protected activity,” Feldman, 752 F.3d at 345 (internal quotation mark omitted). In support of this claim, Deltek again points only to Gunther’s October 26 conduct as an explanation for her termination. As the ALJ determined, given the finding that Deltek’s explanation was pretextual, Deltek by definition could not show by clear and convincing evidence (or even a lesser standard of proof) that it would have terminated Gunther for that reason.

. Neither the ALJ nor the Board referred expressly to the clear and convincing standard in applying the after-acquired evidence doctrine. To the extent that either applied the less demanding preponderance of the evidence standard, such an error could have worked only in Deltek’s favor.

. Indeed, the Secretary of Labor urges that Deltek’s "few sentences of argument” on this point are so lacking in specificity that they are insufficient to engage the issue on appeal. Br. for the Secretary of Labor at 60 (citing cases). We need not decide that question. Even assuming that Deltek's argument, supplemented by an additional paragraph in its reply brief, adequately presents the issue for appeal, we find no ground to disturb the ALJ’s front pay award.

. To the extent the dissent suggests that Gunther’s obligation to provide "essential data” went beyond this showing, we must disagree. Linder case law applying the "essential data" standard, Gunther amply met her burden of providing the ALJ with the basic data necessary to calculate a front pay award: "a proposed salary base” and “a definite duration for the award.” See Barbour v. Merrill, 48 F.3d-1270, 1279, 1280 (D.C.Cir.1995) (under "essential data” rule, where plaintiff established a “prima facie case” for front pay by providing a proposed salary base and- duration, district court erred by denying front pay as unduly speculative); see also McKnight v. Gen. Motors Corp., 973 F.2d 1366, 1372 (7th Cir.1992) (affirming denial of front pay in part because plaintiff failed to provide "essential data” such as "the amount of the proposed award” and "the length of time the plaintiff expects” the award to cover).